BRUCE M. BOLIN, Judge Pro Tem.
The defendant, Edward Scott, was charged by bill of information with one count of possession of cocaine (instant offense), a violation of La. R.S. 40:967(C). He pled not guilty. Following a jury trial, he was found guilty as charged. The State filed a habitual offender bill against him alleging that he was a third felony habitual offender. Following a hearing, he was adjudged a third felony habitual offender and was sentenced, pursuant to La. R.S. 15:529.1(A)(l)(b)(ii), to be imprisoned for the remainder of his natural life at hard labor without benefit of parole, probation, or suspension of sentence. He moved for reconsideration of sentence, but the motion was denied. He appeals from his conviction for the instant offense in 00 KA 0336 and appeals from his habitual offender adjudication and sentence in 00 KA 0337, raising ten assignments of error. Because the only counseled assignment of error concerns the habitual offender sentence and the defendant files the identical nine pro se assignments of error in 00 KA 0336 *1288 and 00 KA 0337, we address the merits of the appeals herein.

FACTS

On March 4, 1997, at approximately 11:55 p.m., Baton Rouge City Police Officer Doug Atkins and his partner, Officer Boyce, were on routine patrol in North Baton Rouge. From a distance of approximately forty or fifty feet, the Officers saw the defendant and two other men standing on the back of a lot next to an abandoned house. The Officers used their vehicle’s high-beam headlights and spotlight to illuminate the area where the men were standing. The Officers saw one of the men, later identified as the defendant, walk towards an abandoned vehicle behind the house. The defendant got into the vehicle on the passenger side. Approximately 10-20 seconds later, the passenger door opened, a plastic bag dropped out onto the ground, and the defendant exited and approached the Officers. The Officers ordered all three men to come toward them and lie on the ground. Officer Atkins approached the abandoned vehicle to investigate the bag and noticed someone in the vehicle. He ordered the man out of the vehicle and up to the front of the lot. Officer Atkins then returned to the vehicle and retrieved the bag on the ground. He suspected that the bag contained crack cocaine and secured it on his person. A subsequent search of the vehicle uncovered two bags of suspected marijuana. Thereafter, a search of the defendant uncovered a bag of suspected marijuana in the left pocket of his pants and an extremely large rock of hsuspected crack cocaine in the pocket of his sweatshirt. The suspected drugs were later determined to be marijuana and cocaine respectively.

EXCESSIVE SENTENCE

In counseled assignment of error number 1, the defendant contends the sentence imposed was unconstitutionally excessive. He argues his case was exceptional within the meaning of State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, and the circumstances of his case are similar to those presented in State v. Hayes, 97-1526 (La.App. 1st Cir.6/25/99), 739 So.2d 301, writ denied, 99-2136 (La.6/16/00), 764 So.2d 955.
In State v. Dorthey, 623 So.2d 1276, 1280-81 (La.1993), the Louisiana Supreme Court recognized that if a trial judge determines that the punishment mandated by the Habitual Offender Law makes no measurable contribution to acceptable goals of punishment or that the sentence amounts to nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime, he is duty bound to reduce the sentence to one that would not be constitutionally excessive.
However, the holding in Dorthey was made only after, and in light of, express recognition by the court that, “the determination and definition of acts which are punishable as crimes is purely a legislative function. It is the legislature’s prerogative to determine the length of the sentence imposed for crimes classified as felonies. Moreover," courts are charged with applying these punishments unless they are found to be unconstitutional.” Dorthey, 623 So.2d at 1278. (Citations omitted). The court also noted that most states have, and the United States Congress has, enacted statutes similar to Louisiana’s Habitual Offender Law, La. R.S. 15:529.1, to provide a deterrent and warning to first offenders and protect society from recidivists. Dorthey, 623 So.2d at 1278. The Court also recognized that the review of sentencing, including sentencing under R.S. 15:529.1, is a long established function of the judicial branch. Dorthey, 623 So.2d at 1280. Louisiana’s judiciary maintains the distinct responsibility of reviewing sentences imposed in criminal cases for constitutional excessiveness. State v. Sepulvado, 367 So.2d 762 (La.1979). The 1974 Louisiana Constitution, Article I, section 20 “gives the courts, in the exercise of their judicial power, a basis *1289 for determining that sentences, whether fíne, imprisonment, or otherwise, though not cruel |4or unusual, are too severe as punishment for certain conduct and thus unconstitutional.” Id. at 766, citing “The Declaration of Rights of the Louisiana Constitution of 1974”, 35 La .L.Rev. 1, 63 (1974). Accordingly, even if a sentence imposed is within the statutory limitations, it still may violate a defendant’s constitutional right against excessive punishment. Id. at 767. In Johnson, 97-1906 at pp. 7-8, 709 So.2d at 676, the Louisiana Supreme Court reexamined the issue of when Dor-they permits a downward departure from the mandatory minimum sentences in the Habitual Offender Law. The court, in pertinent part, noted:
A sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional. See State v. Dorthey, supra at 1281 (Marcus, J., concurring); State v. Young, [94-1636 (La.App. 4th Cir.10/26/95), 663 So.2d 525, writ denied, 95-3010 (La.3/22/96), 669 So.2d 1223]. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality.
[[Image here]]
Instead, to rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Young, 94-1636 at pp. 5-6, 663 So.2d at 528 (Plotkin, J., concurring).
Justice Lemmon, in his concurring opinion in Johnson, 97-1906 at p. 1, 709 So.2d at 678, pointed out that the United States Supreme Court in Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) stated that a life sentence without the possibility of parole for a habitual offender was unconstitutionally excessive when the charged crime is a non-violent crime not involving a person and the prior offenses are relatively minor.
In Hayes, 97-1526 at p. 4, 739 So.2d at 303, this Court held that a life sentence was constitutionally excessive given the particular facts of that case.
In the case at bar, the statements made by the trial judge indicate that he had misgivings about imposing the sentence of life imprisonment without benefit of parole upon this twenty-three year old defendant for simple possession of one rock of cocaine, but that he had no legal authority to do anything else.
| .THE COURT:
And I think you know and appreciate my feelings about the habitual offender statute and the discretion that it does take away from the court. For some reason the legislature in its infinite wisdom decided that this is going to be a mandatory sentence; and, in doing so, they put the word “shall” as opposed to be “may” which takes away the discretion the court has in whether or not I’m going to circumvent these provisions or not. The state has put on evidence satisfactory to this court that Mr. Scott is a third felony offender. At least two of his prior felonies were violations of the Uniform Controlled Dangerous Substance Law. The other was a violation, a crime of violence, as set forth under R.S. 14, Subsection 2(13); therefore, the sentence to be imposed by this court is a mandatory sentence. It — it—it just amazes me — And I can’t put myself in Mr. Scott’s position — Why, facing a sentence of this nature, — -And I’m not going to second-guess everything he’s done prior to today^ — But, why, sitting here today with at least 72 hours available to him to try to prepare an argument or do *1290 anything, he would simply choose to waive Ms delays and proceed with sentencing today. I don’t know if Mr. Scott has anything he wants to say on Ms own behalf before I pronounce sentence—
[[Image here]]
THE COURT:
— But I — I can’t imagine how or why someone’s thought process would be such that they would not care enough about those 72 hours to utilize every hour, every minute available to them. And for reasons unbeknownst to this court, Mr. Scott has chosen not to avail himself of that last opportunity.
It is important to note that the Johnson and Hayes cases were not yet decided at the time Mr. Scott was sentenced. Therefore, the defense counsel, the defendant and the trial court were all unaware that the defendant could have offered evidence prior to being sentenced as a habitual offender that would somehow distinguish Mm as being “exceptional”, which would have allowed a downward departure from the mandatory life sentence.
The Court considers the following factors to be peculiar to this case and to be significant and important:
1. Because this sentencing occurred prior to Johnson and Hayes, the defendant waived his three-day delay prior to sentencing and put on no evidence regarding reasons to downwardly depart from the mandatory sentence;
2. The instance offense is a non-violent crime not involving a person;
3. The defendant’s prior convictions consist of possession of cocaine, middle-grade felony theft, and aggravated battery. Only one of these is a crime of violence and the record does not give any indication of the seriousness . of the actual incident leading to that particular conviction;
4. The defendant was twenty-three years of age on the date the offense occurred and at the time he was convicted;
5.It is alleged that the defendant is mentally disabled. This is particularly important in this case because ■ the record also indicates that the defendant had been offered a plea arrangement whereby he would plead guilty to an offense less serious than simple [ ^possession of cocaine, and upon acceptance of that plea no habitual offender bill would have been filed. The defendant rejected this offer and ultimately received the life without benefit of parole sentence.
The Court considers the above factors to be significant and important enough to justify remanding the matter to the district court solely for the purpose of allowing the district court to receive evidence and determine whether sufficient grounds exist to depart from the mandatory life sentence as prescribed in R.S. 15:529 .1.

PRO SE ASSIGNMENTS OF ERROR

In his pro se brief, the defendant contends the trial court erred: in not allowing the defense to present impeachable evidence to the jury (pro se assignment of error number 1), in allowing a change of defense counsel seventy-two hours before trial (pro se assignment of error number 2), in allowing pre-typed, pre-printed, or pre-fabricated fill-in-the-blank extracts of minutes at the multiple offender adjudication (pro se assignment of error number 3), in denying the defendant’s right to fair warning concerning habitual offender enhancement (pro se assignment of error number 6), in imposing an unconstitutionally excessive sentence upon him (pro se assignment of error number 7), and in failing to advise him of his constitutional rights prior to the commencement of the habitual offender hearing (pro se assignment of error number 9). (Pro se defense brief, p. 4). Additionally, he argues his counsel was ineffective:, due to lack of knowledge of the case (pro se assignment *1291 of error number 4), for failing to file a motion to reconsider sentence (pro se assignment of error number 5), and because no appeal brief was submitted by the Louisiana Appellate Project (pro se assignment of error number 8).
Initially, we note that pro se assignments of error numbers 8, 5, and 8 are without basis in the record. The minute entries relied upon by the State at the habitual offender hearing were not pre-typed, pre-printed, or pre-fabrieated fíll-in-the-blank extracts of minutes; a timely motion to reconsider was filed by defense counsel in this matter; and an appeal brief was submitted by the Louisiana Appellate Project in this matter. Additionally, our treatment of counseled assignment of error number 1 causes us to pretermit consideration of pro se assignment of error number 7.
In pro se assignment of error number 1, the defendant argues defense counsel presented photographs at trial to show it was humanly impossible to view the defendant atl7the distance the police officers claimed they viewed the defendant, but the trial court failed to present the photographs to the jury. Presumably, the defendant is complaining of the trial court’s limited admissibility ruling concerning the photographs at issue. The argument is meritless. The only limit placed on the evidentiary value of the photographs was in regard to their value to depict the condition of the area in question at the time of the offense. The trial court allowed the photographs to go to the jury on the issue of the distances involved. Moreover, defense counsel examined the police officer who claimed to have viewed the defendant from a distance of forty to fifty feet concerning the accuracy of his observations at that distance.
A claim of ineffective assistance of counsel is more properly raised by an application for post-conviction relief in the district court where a full evidentiary hearing may be conducted. However, where the record discloses evidence needed to decide the issue of ineffective assistance of counsel and that issue is raised by assignment of error on appeal, the issue may be addressed in the interest of judicial economy. State v. Williams, 632 So.2d 351, 361 (La.App. 1st Cir.1993), writ denied, 94-1009 (La.9/2/94), 643 So.2d 139.
A claim of ineffectiveness of counsel is analyzed under the two pronged test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to establish that his trial attorney was ineffective, the defendant must first show that the attorney’s performance was deficient, which requires a showing that counsel made errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment. Secondly, the defendant must prove that the deficient performance prejudiced the defense. This element requires a showing that the errors were so serious that defendant was deprived of a fair trial; the defendant must prove actual prejudice before relief will be granted. It is not sufficient for defendant to show that the error had some conceivable effect on the outcome of the proceeding. Rather, he must show that but for the counsel’s unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Further, it is unnecessary to address the issues of both counsel’s performance and prejudice to the defendant if the defendant makes an inadequate showing on one of the components. State v. Serigny, 610 So.2d 857, 859-60 (La.App. 1st Cir.1992), writ denied, 614 So.2d 1263 (La.1993).
 Rln pro se assignments of error numbers 2 and 4, the defendant argues he received ineffective assistance of counsel because he was represented at trial by a different attorney from the office of the public defender than represented prior to trial. The defendant alleges his “new” defense counsel did not have enough time to prepare an effective defense. A review *1292 of the record reveals that both of the defendant’s attorneys filed various pleadings on behalf of the defendant prior to trial, and thus, does not support the defendant’s claim’s of his “new” counsel’s unfamiliarity with his case. Moreover, an evidentiary hearing would be required to determine whether the alleged deficient performance at trial by the defendant’s “new” attorney concerned matters of strategy. See State v. Allen, 94-1941, p. 8 (La.App. 1st Cir.11/9/95), 664 So.2d 1264, 1271, writ denied, 95-2946 (La.3/15/96), 669 So.2d 433. Under our adversary system, once a defendant has the assistance of counsel, the vast array of trial decisions, strategic and tactical, which must be made before and during trial rest with an accused and his attorney. The fact that a particular strategy is unsuccessful does not establish ineffective assistance of counsel. State v. Folse, 623 So.2d 59, 71 (La.App. 1st Cir.1993).
In pro se assignment of error number 6, the defendant relies upon the following provision of La.Code Crim. P. art. 556.1:
E. In any case where a subsequent offense carries an enhanced penalty, the court shall inform the defendant of the penalties for subsequent offenses.
The defendant argues that at the time he pled guilty to the predicate offenses used.by the State, the respective trial courts were obligated to advise him that he would face enhanced penalties under the Habitual Offender Law, La. R.S. 15:529.1 et seq., for future offenses, but failed to do so. We do not reach the merits of the argument. La.Code Crim. P. art. 556.1 was enacted by 1997 La. Acts No. 1061, § 1, effective August 15, 1997. The challenged predicate guilty pleas were all entered prior to the effective date of the provision.
After a habitual offender information is filed, the court in which the instant conviction was had shall cause the defendant to be brought before it, shall inform him of the allegation contained in the information, shall inform him of his right to be tried as to the truth thereof according to law, and shall require the defendant to say whether the allegations are true. La. R.S. 15:529.1(D)(1)(a). The statute further implicitly provides that | ¡¡the court should advise the defendant of his right to remain silent. State v. Griffin, 525 So.2d 705, 706 (La.App. 1st Cir.1988).
In regard to pro se assignment of error number 9, a review of the record reveals that the defendant waived formal arraignment on the habitual offender bill, and thus, gave up his right to advice of his habitual offender rights. Moreover, any error in the advice of habitual offender rights is harmless in this case because the defendant did not plead guilty or stipulate to the charges of the habitual offender bill. Instead, a habitual offender hearing was conducted, wherein the State actually proved the truth of the allegations and the defendant’s identity. See La.Code Crim. P. art. 921; State v. Mickey, 604 So.2d 675, 678 (La.App. 1st Cir.1992), writ denied, 610 So.2d 795 (La.1993).
DECREE
For the foregoing reasons we affirm defendant’s conviction and remand the ease to the district court for a hearing in regard to assignment of error , #1, including re-sentencing, subject to the district court’s determination as to whether the sentence of life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence as mandated by R.S. 15:529.1 for this defendant and for this crime is constitutionally excessive.
CONVICTION AFFIRMED AND REMANDED TO THE TRIAL COURT FOR A HEARING ON SENTENCING.