McCLENDON, J.
LThe defendant, Edward Scott, was charged by bill of information on April 24, 1997, with possession of cocaine, a violation of LSA-R.S. 40:967(C). The defendant pled not guilty and obtained court appointed counsel. Following a jury trial on October 15 through 17, 1997, he was found guilty of the charged offense. The state instituted habitual offender proceedings against the defendant, wherein he was classified as a third felony offender. The defendant pled not guilty to this charge and on February 2, 1998, he was adjudicated a third felony habitual offender under LSA-R.S. 15:529.1. The defendant waived his right to the sentencing delay and was sentenced to the mandatory term of life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence.
The defendant filed a motion to reconsider sentence which was denied by the trial court on March 30, 1998. Defense counsel filed an appellate brief asserting that the statutorily mandated life sentence was unconstitutionally excessive. The defendant also filed a pro se brief alleging eight additional assignments of error.[1] On November 3, 2000, this court affirmed the defendant’s conviction and habitual offender adjudication, but vacated his sentence and remanded to the trial court for resen-tencing.[2] The trial court conducted a re-sentencing hearing on May 2, 2001 and June 27, 2001. After receiving evidence and hearing argument, the trial court again sentenced the defendant to the mandatory term of life imprisonment. On March 22, 2004, this court entered an order of appeal limiting the matter to issues *444 concerning the sentencing proceedings following this court’s November 3, 2000 remand. State ex rel. Scott v. State, 03-1796 (La.App. 1 Cir. 3/22/04) (unpublished). The defendant now appeals, reurging that his sentence is unconstitutionally excessive. We affirm the sentence.

\ .FACTS

On March 4, 1997, Baton Rouge Police Officers Doug Atkins and Duren Boyce were patrolling Winnebago Street in North Baton Rouge in their marked police unit. Shortly before midnight, the officers observed three men, including the defendant, standing on the side of Winnebago Street in front of an abandoned house. When the officers used their high-beam headlights and a spotlight to illuminate the area in which the men were standing, the defendant walked to an abandoned vehicle behind the house and entered the vehicle on the passenger side. Approximately fifteen to twenty seconds later, the defendant opened the door and a plastic bag fell from the vehicle. Defendant exited the vehicle and approached the officers.
Officer Atkins retrieved the plastic bag and found a rock of crack cocaine in it. Officer Atkins also saw another person hiding in the vehicle, and ordered him to come out. A subsequent search of the vehicle by Officer Atkins produced two plastic bags containing marijuana, one on the driver’s side floorboard and the other between the passenger seat and center console. After Officer Atkins conducted a pat-down search of the defendant, a bag of marijuana was found in defendant’s left front pants pocket. The defendant was arrested and taken to the First Police District on Plank Road. The defendant was Mirandized and searched again more thoroughly by Officer Boyce. Officer Boyce found a large rock of crack cocaine in the pocket of the defendant’s pullover sweatshirt. The drugs found on the scene and on the defendant tested positive for marijuana and cocaine.

ASSIGNMENTS OF ERROR NUMBERS 1 AND 2

The defendant contends in his first assignment of error that the sentence imposed was unconstitutionally excessive. He contends in his second assignment of error that defense counsel’s failure to file a motion to reconsider sentence constituted ineffective assistance of counsel.
|4A review of the record indicates that defense counsel did not make a motion to reconsider sentence nor did he object to the sentence.[3] Under LSA-C.Cr.P. arts. 881.1(E) and 881.2(A)(1), the failure to make or file a motion to reconsider sentence shall preclude the defendant from raising an objection to the sentence on appeal, including a claim of excessiveness. The defendant, therefore, is procedurally barred from having this assignment of error reviewed. State v. Duncan, 94-1563, p. 2 (La.App. 1 Cir. 12/15/95), 667 So.2d 1141, 1143 (en banc per curiam). See also State v. Felder, 00-2887, p. 10 (La.App. 1 Cir. 9/28/01), 809 So.2d 360, 369, writ denied, 01-3027 (La.10/25/02), 827 So.2d 1173. However, we will examine the sentence for exces-siveness because it is necessary to do so as part of the analysis of the ineffective counsel issue in the defendant’s second assignment of error. See State v. Bickham, 98-1839, p. 7 (La.App. 1 Cir. 6/25/99), 739 So.2d 887, 891-892.
*445 Although a claim of ineffective assistance of counsel is normally raised in an application for post-conviction relief, this Court may address the merits of the claim when the record on appeal is sufficient. State v. Seiss, 428 So.2d 444, 448-449 (La.1983). In this instance, the record is sufficient, and we will therefore address the defendant’s claim.
In Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), the United States Supreme Court enunciated the test for evaluating the competence of trial counsel:
First, the defendant must show that counsel’s performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
| RIn evaluating the performance of counsel, the inquiry is whether counsel’s assistance was reasonable under the circumstances. State v. Morgan, 472 So.2d 934, 937 (La.App. 1 Cir.1985). In making the determination of whether the specific error resulted in an improper sentence, the inquiry must be directed to whether there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. See State v. Morgan, 472 So.2d at 937. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. State v. Robinson, 471 So.2d 1035, 1038-1039 (La.App. 1 Cir.), writ denied, 476 So.2d 350 (La.1985).
Article I, section 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. Louisiana C.Cr.P. art. 894.1 sets forth the factors for the trial court to consider when imposing a sentence. While the entire checklist of Article 894.1 need not be recited, the record must reflect the trial court adequately considered the criteria. Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). A sentence is considered constitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks one’s sense of justice. State v. Andrews, 94-0842, pp. 8-9 (La.App. 1 Cir. 5/5/95), 655 So.2d 448, 454. The trial court has great discretion in imposing a sentence within the statutory limits, and such a sentence will not be set aside as excessive in the absence of a manifest abuse of discretion. See State v. Holts, 525 So.2d 1241, 1245 (La.App. 1 Cir.1988).
The goal of LSA-C.Cr.P. art. 894.1 is the articulation of the factual basis for a sentence, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with LSA-jC.Cr.P.fi art. 894.1. State v. Lanclos, 419 So.2d 475, 478 (La.1982). The trial judge should review the defendant’s personal history, his prior criminal record, the seriousness of *446 the offense, the likelihood that he will commit another crime, and his potential for rehabilitation through correctional services other than confinement. State v. Jones, 398 So.2d 1049, 1051-1052 (La.1981). On appellate review of a sentence, the relevant question is “ ‘whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.” ’ State v. Thomas, 98-1144, pp. 1-2 (La.10/9/98), 719 So.2d 49, 50 (per curiam), quoting State v. Humphrey, 445 So.2d 1155, 1165 (La.1984).
The defendant in the instant matter was adjudicated a third felony habitual offender under La. R.S. 15:529.1(A)(l)(b)(ii), which stated at the time the offense was committed:
If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
Pursuant to the relevant version of LSA-R.S. 15:529.1(A)(l)(b)(ii), the trial court imposed the statutorily mandated sentence of life imprisonment.
In State v. Dorthey, 623 So.2d 1276, 1280-1281 (La.1993), the Louisiana Supreme Court opined that if a trial judge were to find that the punishment mandated by LSA-R.S. 15:529.1 made no “ ‘measurable contribution to acceptable goals of punishment’” or find that the sentence was nothing more than “‘the purposeful imposition of pain and suffering” ’ and was “ ‘grossly out of proportion to the severity of the crime,” ’ the trial judge has a duty “to reduce such sentence to one that would not be constitutionally excessive.” State v. Dorthey, 623 So.2d at 1280, quoting State v. Scott, 593 So.2d 704, 711 (La.App. 4 Cir.1991).
In State v. Johnson, 97-1906, pp. 7-9 (La.3/4/98), 709 So.2d 672, 676-677, the Louisiana Supreme Court reexamined the issue of when Dorthey |7permits a downward departure from the mandatory minimum sentences in the Habitual Offender Law. The Johnson court stated that a sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality. A trial judge may not rely solely upon the non-violent nature of the instant crime or of past crimes as evidence that justifies rebutting the presumption of constitutionality. While the classification of a defendant’s instant or prior offenses as non-violent should not be discounted, this factor has already been taken into account under the Habitual Offender Law for third and fourth offenders. State v. Johnson, 97-1906 at p. 7, 709 So.2d at 676.
To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that he is exceptional, which means that because of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. Given the legislature’s constitutional authority to enact statutes such as the Habitual Offender Law, it is not the role of the sentencing court to question the wisdom ,of the legislature in requiring enhanced pun *447 ishments for multiple offenders. Instead, the sentencing court is only allowed to determine whether the particular defendant before it has proven that the mandatory minimum sentence is so excessive in his case that it violates the constitution. Departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations. State v. Johnson, 97-1906 at pp. 8-9, 709 So.2d at 676-677.
In the instant matter, on remand to the trial court for resentencing following the defendant’s first appeal, this court listed the following five factors it considered significant and important enough to justify remanding for the purpose of allowing the district court to receive evidence and determine whether | Ssufficient grounds existed to depart from the mandatory life sentence as prescribed in LSA-R.S. 15:529.1:
1. Because this sentencing occurred prior to Johnson and Hayes, the defendant waived his three-day delay prior to sentencing and put on no evidence regarding reasons to downwardly depart from the mandatory sentence;
2. The instan[t] offense is a non-violent crime not involving a person;
3. The defendant’s prior convictions consist of possession of cocaine, middle-grade felony theft, and aggravated battery. Only one of these is a crime of violence and the record does not give any indication of the seriousness of the actual incident leading to that particular conviction;
4. The defendant was twenty-three years of age on the date the offense occurred and at the time he was convicted;
5. It is alleged that the defendant is mentally disabled. This is particularly important in this case because the record also indicates that the defendant had been offered a plea arrangement whereby he would plead guilty to an offense less serious than simple possession of cocaine, and upon acceptance of that plea no habitual offender bill would have been filed. The defendant rejected this offer and ultimately received the life without benefit of parole sentence.
State v. Scott, 00-0337 at pp. 5-6, 769 So.2d at 1290.
The defendant contends that the first and fifth factors are related in that his waiver of the three-day sentencing delay and his refusal of an offered plea arrangement indicate that he is mentally disabled. Specifically, the defendant points out that he was in special education classes in school as a result of being “slow.” The defendant further alleges that what is “most telling” is the fact that he was unable to participate in his own defense, including the sentencing hearing.
It is likely the defendant waived the sentencing delay because the only possible sentence was a mandatory life sentence. In State v. Scott, 00-0337 at p. 5, 769 So.2d at 1289-1290, we quoted the trial court at sentencing when it addressed the defendant:
For some reason the legislature in its infinite wisdom decided that this is going to be a mandatory sentence; and, in doing so, they put the word “shall” as opposed to be (sic) “may” which takes away the discretion the court has in whether or not I’m going to circumvent these provisions or not....
|9We then concluded:
It is important to note that the Johnson and Hayes cases were not yet decided at the time Mr. Scott was sentenced. Therefore, the defense counsel, the defendant and the trial court were all unaware that the defendant could have offered evidence prior to being sentenced as a habitual offender that would some *448 how distinguish him as being “exceptional”, which would have allowed a downward departure from the mandatory life sentence.
Thus, as we explained in the earlier Scott decision, it appears that the defendant waived his sentencing delay because he was not aware that not waiving the delay could have produced a different result. In other words, given what the defendant was told, as well as what’ defense counsel and the trial court understood the law to be, any sentencing delay would have been devoid of any practical effect in light of the imposition of a mandatory life sentence. In this particular record, there is nothing to suggest that the defendant waived his delay because of any mental disability.
When the defendant rejected the plea arrangement offered him and chose instead to go to trial, it is clear in retrospect that he made the wrong choice. However, a poor choice does not indicate mental instability. The defendant could very well have chosen to go to trial because he thought he would not be found guilty. While the defendant introduced some evidence regarding special education classes, he introduced no evidence to indicate a mental impairment that would have vitiated his ability to distinguish between the consequences of accepting a guilty plea and proceeding to trial. As the trial court at sentencing, on remand found:
The evidence presented regarding the mental capacity, although Margaret Dumas indicated they had no records, we did have some records from school and we had the testimony of Mr. Scott’s Aunt, Mrs. Janice Wallace, who, in essence, indicated that Mr. Scott was not retarded, but he was slow and that he’s never been diagnosed with any mental illness, although he did participate in some special education classes in school and some regular classes through the ninth grade up until the time that he quit school. Based on what has been submitted to the court both at today’s proceeding and at the prior hearing when Mrs. Wallace testified, I don’t find that there has been a showing of any reason or basis to justify a departure from the mandatory sentence set forth in 15:529.1.
ImWe also do not agree with the defendant’s allegation that, because of a mental disability, he was unable to participate in his own defense, including the remanded sentencing hearing. At the May 2, 2001 sentencing hearing, the defendant left the witness stand after stating his name and address. Defense counsel explained that the defendant appeared to be overcome with emotion. After the court recessed the matter, the defendant took the stand again.[4] The following exchange between defense counsel and the defendant took place:
Q. Edward, you’re out at Angola Penitentiary right now; correct?
A. Yes, sir.
Q. You’re serving a life sentence?
A. Yes, sir.
Q. You were convicted of three different felonies; correct?
A. Yes, sir.
Q. And the last one was a possession of cocaine charge which you had a trial on right here in this courtroom; right?
A. Yes, sir.
Q. All right. Edward, what’s your date of birth?
*449 A. 12/24/73.
Q. And are your — either one of your parents living? Are either of your parents — okay. Let’s back away from that. That’s a sensitive subject. All right? How far did you go in school, Edward?
A. Ninth grade.
Q. Did you quit or were you thrown out?
A. Quit.
Q. Were you in regular education classes or were you in special ed. classes? Edward?
A. It was special ed. class.
Mr. Russell [defense counsel]: Judge, I’m going to ask for a recess. The things that I’ve got to get out of this witness are very, very delicate and I just can’t proceed.
l^The defendant never retook the stand. After the defendant’s aunt, Janice Wallace, testified, the matter was continued. This exchange suggests that the defendant could not continue on the stand, not because of a mental disability, but because he was overcome with emotion, as pointed out by defense counsel. Moreover, when the defendant took the stand the second time, it was defense counsel who disrupted the examination and stated, “I just can’t proceed.”
Finally, a review of the entire record reveals that the defendant has more than adequately participated in his own defense. The defendant filed a pro se motion for leave to act as co-counsel and has filed over twenty pro se motions, briefs, and writs with the trial and appellate courts, including a pro se appeal containing nine assignments of error.
In the case of In the Matter of Hipp, Inc., 5 F.3d 109, 116 n. 21 (5th Cir.1993), the defendant raised the issue of mental competency. However, the district court found the defendant’s competence amply demonstrated by the numerous pro se. motions he filed. Similarly, the defendant here, in demonstrating his competence through numerous pro se motions, has failed to prove that his defense, counseled or otherwise, was adversely affected by any alleged mental disability.
In considering the second and third factors outlined by this court on remand, the trial court found that while the instant offense was non-violent, one of the defendant’s prior convictions, for which he was adjudicated a habitual offender, was a serious crime of violénee:
On January 13th of 1994, under bill 3-94-270, Mr. Scott was charged with armed robbery and attempted second degree murder....
[[Image here]]
The facts of that particular case, according to the information contained in the record, is that on or about January 13th of 1994 a cab driver was shot and robbed which resulted in Mr. Scott’s arrest and his being charged with the armed robbery and attempted second degree murder. As both the defense and state indicated, subsequent to being billed with those offenses, on August 22nd of 1995 he entered into a best interest plea: Count I, felony theft, as opposed to armed robbery; Count II, aggravated battery, as opposed to second degree murder....
[[Image here]]
112Based on the evidence and testimony presented ... some of the cases that I reviewed, particularly, the Hayes case wherein a review of the underlying facts enured to the benefit of the defendant, that was a robbery case which I think alluded to the facts that an individual pushed a juvenile off a bike and took the *450 bike. The crime would be a crime of violence. The underlying facts would, in that court’s opinion, justify departure from a mandatory minimum sentence. In this particular case a review of the underlying facts determine the seriousness of the actual incident leading to his conviction works against the defense,
[[Image here]]
* * ⅜
In those convictions is at least one crime of violence, as set forth under R.S. 14, section 2, subsection 13, and the facts of that case show that they were very serious facts which ultimately led to his conviction, albeit a best interest plea to responsive charges.
State v. Hayes, 97-1526 (La.App. 1 Cir. 5/15/98), 712 So.2d 1019, writ granted and case remanded, 98-1603 (La.12/11/98), 729 So.2d 584, and Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), two decisions relied on by the defendant, are distinguishable from the instant matter. In Hayes, the crime of violence involved a simple robbery wherein the defendant pushed the victim and stole his bicycle. None of the defendant’s crimes involved a dangerous weapon. State v. Hayes, 97-1526 at pp. 5-6, 712 So.2d at 1022. Similarly, in Solem,[5] none of the offenses for which the defendant was adjudicated a habitual offender were crimes of violence. See Solem v. Helm, 463 U.S. at 279-280, 103 S.Ct. at 3004-3005. In the instant matter, the act of shooting at a cab driver while trying to take his money was a very serious, if not potentially deadly, crime of violence.[6]
In considering the fourth factor, the trial court found that while the defendant was only twenty-three years old at the time of the present offense, he had committed a multitude of offenses:
|1sRather, reviewing his record and, again, addressing the fourth factor, he is 23 years of age, hut his record indicates that since 1991 he has had some 21 arrests and seven convictions, three of which are felony grade offenses. So he is not an individual who is first being introduced to the criminal justice system. He has been through it at some time. I did not nor will I look at and consider any juvenile record. For the purposes of today’s proceedings, my review is limited solely to what Mr. Scott has done since reaching adulthood under criminal court purposes. (Emphasis added.)
The defendant also contends that the ameliorative change in the Habitual Offender Law, since the time of his adjudication as a habitual offender, indicates the legislature’s clear intent was to substantially reduce the amount of his sentence. *451 The defendant asserts that under the new law, his sentence would be a maximum of ten years imprisonment..
In State v. Jones, 99-2207, p. 6 (La.1/29/01), 778 So.2d 1131, 1134 (per curiam), the Louisiana Supreme Court stated that “the legislature’s subsequent changes in pertinent law remain a relevant sentencing consideration within the limits fixed by law at the time of the commission of the crime.” (Emphasis added.) Thus, without proof that the defendant’s history is an exceptional one, the prospective change in the law is not enough to justify any downward departure in sentencing. See State v. Surry, 37,448 (La.App. 2 Cir. 9/24/03), 855 So.2d 893, writ denied, 03-3118 (La.5/21/04), 874 So.2d 171.
Based on our review of this particular record, we cannot say that the trial court abused its discretion in finding that the defendant did not meet his burden to justify a downward departure from the mandatory life sentence imposed under LSA-R.S. 15:529.1. When resentencing the defendant to life imprisonment, the trial court noted that there had been changes in the relevant law. However, the defendant did not prove by clear and convincing evidence that he was exceptional to the extent that a mandatory life sentence would not be meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. See State v. Johnson, 97-1906 at p. 8, 709 So.2d at 676. Therefore, on the claim of ineffective counsel, we find that the defendant has not met his burden of showing that he suffered prejudice or that the sentence would have reasonably been different absent defense |14counsel’s failure to file a motion to reconsider sentence. See State v. Hilton, 99-1239, p. 15 (La.App. 1 Cir. 3/31/00), 764 So.2d 1027, 1037, writ denied, 00-0958 (La.3/9/01), 786 So.2d 113.
These assignments of error are without merit.
SENTENCE AFFIRMED.
WHIPPLE, J., concurs.

. The defendant's habitual offender adjudication was assigned a separate docket number. As a result, there are two docket numbers relating to this appeal: 2000 KA 0336, which contains the record for the defendant’s instant conviction, and 2000 KA 0337, which contains the record for the defendant’s habitual offender adjudication and sentence.

. State v. Scott, 00-0337 (La.App. 1 Cir. 11/3/00), 769 So.2d 1286.

. Defense counsel did make an oral motion to reconsider sentence, but after conferring with a colleague, withdrew his oral motion to reconsider sentence, and informed the trial court that he would file a written motion to reconsider sentence. However, defense counsel did not file a written motion to reconsider sentence.

. At the June 27, 2001, sentencing hearing, which was a continuation of the May 2, 2001 sentencing hearing, the defendant, after speaking with defense counsel, elected not to testify.

. The Supreme Court has called Solem into question, rendering its validity as persuasive authority doubtful. See Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991).

. See State v. Randall, 99-2476, pp. 1-2 (La.12/15/00), 776 So.2d 424, 425 (per curiam), where the defendant, a third felony offender, argued he was an exceptional case for relief from the mandatory sentence of life imprisonment. The third circuit vacated the sentence and remanded for resentencing. The supreme court reinstated the life sentence and found that the district court properly declined to substitute its judgment as to the appropriate punishment for that of the legislature. The district court had found that even though the defendant was only 29 years old, his present conviction was his second for a crime of violence. During the present offense, the defendant grabbed the handlebars of the victim’s bicycle, and repeatedly struck the victim, while an accomplice struck the victim with a beer bottle. The district court found the victim was seriously injured and actually could have been killed under the circumstances of that robbery.