472 So.2d 934 (1985)
STATE of Louisiana
v.
Elvis MORGAN.
No. KA 85 0103.
Court of Appeal of Louisiana, First Circuit.
June 25, 1985.
*936 Bryan Bush, Dist. Atty. by Don Wall, Asst. Dist. Atty., Baton Rouge, for plaintiff appellee.
Warren Hebert, Baton Rouge, for defendant appellant.
Before COLE, CARTER and LANIER, JJ.
LANIER, Judge.
The defendant, Elvis Morgan, was charged with four counts of simple burglary in violation of La.R.S. 14:62. The defendant pled not guilty, waived a jury trial and, after a trial by judge, was found guilty as charged. The defendant discharged his court-appointed counsel and secured a retained counsel. Retained counsel filed a motion for a new trial alleging the defendant did not knowingly and intelligently waive his right to trial by jury and ineffective assistance of court-appointed counsel. After a hearing, the motion for a new trial was denied. Defendant was sentenced to serve six years at hard labor in the custody of the Louisiana Department of Corrections on each count. The four sentences were ordered to be served concurrently. This appeal followed.

FACTS
From January 1 to May 21, 1982, the Ready Portion Meat Company (Ready), located at 1546 Choctaw Drive in East Baton Rouge Parish, experienced a series of incidents which resulted in 84 batteries being taken from their trucks. Because of this, Joseph J. Besselman, Ready's manager, and T.H. Brister, a Ready salesman, decided to stake out the Ready parking lot on the night of May 21-22, 1982. This action had been discussed with the Baton Rouge Police Department (BRPD), and the men were provided with a phone number to call if necessary. The stakeout commenced at approximately 6:00 or 7:00 p.m. The parking lot was well-lighted. Eight trucks were in the lot and were located a short distance from the building from which Besselman and Brister were observing them.
At approximately 1:00 a.m. on May 22, 1982, Besselman and Brister observed five men coming across the property of the mattress company which adjoined Ready's property. When the men got on Ready's property, Besselman called the police. The five men commenced taking batteries from under the hoods of the parked vehicles. When the first battery was removed, Besselman again called the police. However, a train blocked the access route of the police to the Ready property. When Besselman and Brister heard the men breaking into a truck loaded with meat, the police were called again by Besselman. About five minutes after the first call was made and shortly after the last call was made, the police arrived. When the men taking the batteries saw the police, they attempted to escape.
Officer Larry Hayes, a member of the K-9 division of BRPD, stationed himself on school property located immediately south of the Ready property to block this avenue of escape. The school property and the Ready property were separated by a fence. Hayes saw Morgan come over the fence and arrested him. Morgan was brought back to the Ready property by another officer and was positively identified by Besselman and Brister. Three individuals were ultimately arrested: Morgan, Shan Duheart and Roosevelt Lands.[1]

INEFFECTIVE ASSISTANCE OF COUNSEL

(Assignment of Error No. 1)
Morgan contends he should have been granted a new trial because his court-appointed counsel failed to call six alibi witnesses who were in court and who would show "he had just left a supper party within minutes prior to being apprehended by *937 the police near a public school some blocks from the scene of the alleged burglary."
A claim of ineffective assistance of counsel is more properly raised by an application for post conviction relief in the district court where a full evidentiary hearing may be conducted. La.C.Cr.P. art. 924, et seq.; State v. Bourgeois, 451 So.2d 172 (La.App. 1st Cir.1984), writ denied, 457 So.2d 18 (La.1984). In the instant case, the trial court held a hearing on this allegation of ineffective counsel. Because the claim was explored in detail by the trial judge and the record discloses the evidence needed to decide the issue, we will address the question in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Williams, 464 So.2d 451 (La.App. 1st Cir.1985).
The test for evaluating the competence of trial counsel was recently articulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), wherein the Court stated:
A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
In evaluating the performance of counsel, the "inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Id. at 104 S.Ct. 2065. In making the determination of whether the specific errors resulted in an unreliable verdict, the inquiry must be directed to whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 104 S.Ct. 2068.
In his testimony at the trial, Morgan said he was not involved in the burglaries. He stated he had been at a supper-card party at the home of Jessie Williams on 15th Street and was walking to his home at 2804 Adams Avenue. When he came off 15th Street and passed in front of the school, the K-9 officer stopped him and made him lie flat on his stomach. Another officer in civilian clothes came up and kicked him in the side. This second officer then took him back to the fence between the school and Ready properties. A third officer in a city police uniform came up and hit him on the head with a flashlight. Morgan testified he did not know Shan Duheart and never saw him before.
At the hearing on the motion for a new trial, Morgan testified he had six alibi witnesses who voluntarily appeared at his trial to testify on his behalf but that his court-appointed counsel refused to call them to the stand. The witnesses were Freddie Lee Williams, Jessie Williams, Peppy, Ronnie Lee, Robert Taylor and Morgan's wife. Morgan told his court-appointed counsel about these witnesses several times before the trial. After he testified at the trial, Morgan asked his counsel about the witnesses and was told to be quiet. Morgan then testified as follows on rebuttal:
A Well, I told Mr. Jackson, you know, I couldn't give him a definite answer on what time it was because I never did look at no clock or a watch but I told him it had to be between 11:30 or twelve o'clock, something like that and it was about ten minutes when they picked me up. The police took, uh, picked me up at the corner with a police dog, picked me up, took me by the school, took me all the way back *938 to the fence and as he was taking me to the fence another officer come up and say, uh, where your friends at and I say, Officer, I don't know what you're talking about and I say, what y'all got me for and he say, you just took four batteries out the truck and I say, no, I didn't. I say, do you see four batteries on me? He say, uh, you getting smart, you don't know where your friends at. I say, I don't know who you talking about. So that's when they went to joog (sic) me in my stomach with the stick and I bend over and one of them hit me in the head with aa big flashlight, you know, and bust my head and I was dazed, you know. And by the time I come through they had dragged me over there to the fence, you know, and throwed me back cross the fence and that's when a black officer come up, you know. He had told me his name. I done forgot. And he told me if I need him in court for him to testify about how they had beat me and stuff because I was trying to talk to him and he just told me, go on, get in the car. He had to do his job.
Morgan's court-appointed counsel testified Morgan told him he (Morgan) left the house about an hour before the incident occurred. Counsel advised Morgan this would not help because he was arrested about an hour later than the time to which the witnesses would testify. Morgan had no witnesses for the one hour period between the time he left the house and his arrest. It was counsel's opinion that the testimony of Morgan's witnesses (as related to him by Morgan) was insufficient to establish the defense of alibi. Based on his conversation with Morgan about the witnesses, counsel did not write down their names and did not send out an investigator to interview them. Counsel specifically testified that to the best of his knowledge none of the alibi witnesses were present in court for the trial, except possibly a lady.
Morgan and his court-appointed counsel were the only witnesses to testify at the hearing on the motion for a new trial.[2] It is implicit from the trial court's denial of the motion that it accepted as fact the testimony of counsel and rejected that of Morgan. Based on the facts established by the testimony of Morgan's counsel, the testimony of the alleged alibi witnesses would not establish the defense of alibi. Since the witnesses' testimony would not establish a viable defense, counsel's performance was not deficient for failing to call them to testify (even assuming they were in the courtroom).
This assignment of error is without merit.

SENTENCE

(Assignments of Error Nos. 2-7)[3]
Morgan contends his sentences should be set aside and he should be resentenced because the trial court failed to comply with La.C.Cr.P. art. 894.1, considered improper and inaccurate facts in imposing sentence and imposed an excessive sentence.
Immediately after denying the motion for a new trial, the trial judge asked counsel for the defendant if he was ready for sentence. Retained counsel responded that he was and requested permission to review the presentence investigation report. The trial judge gave the presentence investigation report to Morgan's counsel who reviewed it in open court. The trial judge then asked Morgan's counsel if he moved for sentencing, and counsel responded that he did.[4] The trial judge asked *939 Morgan his age and amount of schooling, and Morgan responded 26 years old and 12th grade. The trial judge then sentenced Morgan and assigned no reasons for sentence.[5] However, the sentencing minute entry shows the following:
Factors considered by the court: (1) accused is first felony offender but has over a dozen arrests and three burglary charges pending in this court as well as a felony theft; (2) poor pre-sentence report recommendation; (3) accused has numerous misdemeanor convictions and incarceration is necessary; (4) no one was threatened in these offenses and all four offenses were against the same victim; (5) the defendant is a danger to the public in light of the burglary charges.
The trial judge failed to adequately comply with La.C.Cr.P. art. 894.1. However, such error does not require a remand for resentencing if the sentence imposed is not apparently severe in relation to the particular offender or the actual offense committed. State v. Davis, 448 So.2d 645 (La.1984). Such error only requires a remand when there appears to be a substantial possibility a defendant's complaint of excessive sentence has merit. State v. Wimberly, 414 So.2d 666 (La.1982).
A majority of the Louisiana Supreme Court has held that Article I, § 20 of the Louisiana Constitution of 1974 prohibits the imposition by law of excessive punishment and that, although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So.2d 762 (La.1979). The trial judge is given a wide discretion in the imposition of sentence within statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Prados, 404 So.2d 925 (La.1981); State v. Spencer, 374 So.2d 1195 (La.1979). A punishment may be unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering, or is grossly out of proportion to the severity of the crime. State v. Sims, 410 So.2d 1082 (La.1982). Important factors to consider in imposing sentence are the nature of the offense and the offender, the legislative purpose behind the punishment and a comparison of the defendant's punishment with punishments imposed in other cases. State v. Telsee, 425 So.2d 1251 (La. 1983). Concurrent rather than consecutive sentences are the usual rule for convictions arising out of a single course of criminal conduct where the offender has no previous criminal record and there is no showing that public safety requires a longer sentence. However, consecutive sentences are justified when the offender poses an unusual risk to public safety. La.C.Cr.P. art. 883; State v. Lewis, 445 So.2d 195 (La.App. 3rd Cir.1984), writ denied, 446 So.2d 1231 (La.1984); State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.1983), writ denied, 435 So.2d 433 (La.1983). Maximum sentences are to be reserved for the most egregious and blameworthy of offenders within a class. State v. Jones, 398 So.2d 1049 (La. 1981).
The penalty for simple burglary is imprisonment with or without hard labor for not more than twelve years and/or a fine of not more than $2,000. The maximum possible sentence for four simple burglaries is imprisonment at hard labor for not more than forty-eight years and a fine of $8,000. The sentence of six years at hard labor given herein is in the mid-range for one count, all four sentences were ordered to be served concurrently and no fine was imposed.
The crimes charged herein were part of an organized attempt to take substantial *940 property from Ready. The presentence investigation report shows the following facts about the crime. Three batteries were actually taken from Ready trucks. They were valued at $165 and were not returned. On the fourth truck, the battery was dismantled from its cables, but it was not removed. Five of the eight trucks on the premises had their hoods opened. On one truck (whose battery was taken), the padlock on the cargo area had been cut off. This truck was loaded with $2,500 worth of meats. The presentence investigation report shows Morgan gave the following statement to the investigating officer:
When interviewed, the subject stated that on the date of this offense, he, Roosevelt Lands, James Jarreau and Quintin had discussed hitting the Ready Portion Meat Company to get meat. The subject stated that before the burglary went down, he went to a supper on 15th Street and advised his friends that he would check with them later. The subject advised that he stayed at the supper about 40 minutes and was looking for them when a police K-9 officer arrested him. The subject stated that he was aware of what was going down. The subject advised that Shan Duheart did not take part in the burglary. He indicated that none of the other co-defendants knew Shan. The subject also advised that police officers beat him repeatedly at the time of his arrest.
The perpetrators of these offenses were unable to complete their plans only because the police arrived. When the police arrived, the perpetrators (including the defendant) attempted to escape.
The presentence investigation report shows Morgan had ten arrests and two prior convictions for misdemeanors. Morgan also was scheduled to have a trial on another burglary charge on January 13, 1984. The report recommended "an appropriate period of incarceration in the Department of Corrections."
The sentence imposed herein compares with sentences imposed in similar cases. State v. Ratigan, 446 So.2d 525 (La.App. 3rd Cir.1984); State v. Lewis, 445 So.2d 195 (La.App. 3rd Cir.1984), writ denied, 446 So.2d 1231 (La.1984); State v. Thompson, 444 So.2d 650 (La.App. 1st Cir.1983); State v. Johnson, 442 So.2d 719 (La.App. 1st Cir.1983); State v. Triplett, 434 So.2d 1270 (La.App. 1st Cir.1983).
After considering the nature of the offense and the offender, the purpose of burglary laws and sentences imposed in other cases, we cannot say the trial judge abused his sentencing discretion. The sentence is not excessive.
Morgan contends it is error to consider for sentencing purposes arrests which have not led to convictions, citing State v. Green, 440 So.2d 847 (La.App. 2nd Cir. 1983). This contention is without merit. State v. Washington, 414 So.2d 313 (La. 1982); State v. Brown, 410 So.2d 1043 (La. 1982); State v. Smith, 457 So.2d 846 (La. App. 1st Cir.1984).
The factual errors contained in the sentencing minute entry are not sufficient to affect the sentence or justify a remand.
These assignments of error are without merit.

DECREE
For the foregoing reasons, the convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] Morgan, Duheart and Lands were jointly charged in the same bill of information. However, only Morgan and Duheart were jointly tried. Lands failed to appear for trial and a bench warrant was issued.
[2] None of the six alleged alibi witnesses were called to testify at the hearing.
[3] In brief, Morgan indicates he is presenting an argument on assignments of error Nos. 2-8, but the brief only alleges seven assignments of error.
[4] We construe this response as a waiver of the 24 hour delay provided for in La.C.Cr.P. art. 873. Even if this is not a proper waiver, the appellant has not alleged or shown prejudice by the lack of the delay. State v. White, 404 So.2d 1202 (La.1981); State v. Casimier, 454 So.2d 1199 (La.App. 4th Cir.1984); State v. Colvin, 452 So.2d 1214 (La.App. 2nd Cir.1984), writ denied, 457 So.2d 1199 (La.1984); State v. Mason, 447 So.2d 1134 (La.App.1st Cir.1984).
[5] Morgan's counsel did not present any mitigating circumstances and did not complain of errors in the presentence investigation report.