STATE OF LOUISIANA
v.
JUSTIN S. GRANIER.
No. 2007 KA 0807.
Court of Appeal of Louisiana, First Circuit.
December 21, 2007.
NOT DESIGNATED FOR PUBLICATION.
ANTHONY G. FALTERMAN, District Attorney, Donald D. Candell, Assistant District Attorney, Attorney for Appellee the State of Louisiana.
KATHERINE M. FRANKS, Attorney for Defendant/Appellant Justin S. Granier.
Before GAIDRY, MCDONALD and McCLENDON, JJ.
MCDONALD, J.
The defendant, Justin Granier, was initially charged by grand jury indictment with one count of first degree murder, a violation of La. R.S. 14:30, and pled not guilty. Thereafter, the charge was amended to one count of second degree murder, a violation of La. R.S. 14:30.1, and the defendant pled not guilty. Following a jury trial, he was found guilty as charged by unanimous verdict. He was sentenced to life imprisonment at hard labor without the benefit of probation, parole or suspension of sentence. The defendant now appeals, designating two counseled assignments of error and four pro se assignments of error. We affirm the conviction and sentence.

FACTS
On September 15, 2001, at about 5:30 a.m., two men approached Delaune's Supermarket in St. Amant, Ascension Parish, with the intent to rob a cashier. One of the men, armed with a 30-30 Marlin rifle, shot and killed Luke Villar, a Delaune's employee cleaning the parking lot. The same gunman then walked to the doorway of Delaune's and shot at Angelina Weber, an employee standing by the cash register. The two men then ran. Angelina survived, but sustained wounds to her head and arm caused by bullet fragments. Angelina was unable to identify the gunman. It did not appear any money was taken from the store.
Based on an incident that had occurred at about 4:30 a.m. that same morning at a residence about a quarter mile from Delaune's, officers from the Ascension Parish Sheriff's Office brought the defendant in for questioning, along with Lucas Roddy and Josh Barrow. The defendant and Barrow gave statements admitting their involvement in the incident at Delaune's.
The defendant gave two separate statements to the police and testified at trial. Both statements were introduced into evidence at trial. In his first statement to the police, the defendant said that he drove and Roddy and Barrow were passengers. After the three decided to rob Delaune's, the defendant parked 100 to 200 yards away from Delaune's. Roddy and Barrow exited the car with guns, while the defendant remained in the car. The defendant heard gunshots, and moments later Roddy and Barrow got back in the car with their guns. Roddy said he shot someone and he thought he killed him. The defendant drove to the house of Nick Babin, a friend. Roddy and Barrow removed their long sleeve shirts, and the defendant hid the clothing in Babin's barbecue pit.
In his second statement to the police, the defendant said that he drove to Delaune's and parked about 50 yards away from there. Only Roddy was with the defendant. Barrow was at Justin Smith's house.[1] Roddy exited the car with the 30-30 rifle,[2] and the defendant exited the car with a loaded 20-gauge shotgun. According to the defendant, the plan was to "tell everybody to stand back and get the money." When they got within ten to twenty feet of the employee (Villar) in the parking lot, Roddy shot him in the back. Villar fell, got up, and Roddy shot him again. The defendant ran back to the car. The defendant did not fire his weapon. The defendant drove to Babin's house where he (the defendant) and Roddy removed their long sleeve shirts. They hid the shotgun in the bushes outside and hid the 30-30 rifle underneath the back of Babin's house.
At trial, the defendant testified that the first statement he gave to the police was true, and the second statement he gave to the police was false. According to the defendant, the truth was that he did not get out of the car and that Roddy shot Villar. On cross-examination, the defendant admitted: that he knew Roddy and Barrow were going to rob the store; that while he waited for them, Villar was killed; and that after he heard the gunshots, he waited in the getaway car until Roddy and Barrow returned, then drove away with them. The defendant did not admit that he hid the guns.

FIRST ASSIGNMENT OF ERROR
In his first assigmnent of error, the defendant argues that the prosecutor was ethically bound to call the witnesses he referred to during voir dire and in his opening statement, instead of using hearsay testimony that implicated him. The defendant contends that the prosecutor's failure to call the witnesses after lulling defense counsel into not objecting to the hearsay because he was under the impression that cross-examination would be afforded the defendant was in bad faith and constitutes prosecutorial misconduct warranting a new trial.[3]
During voir dire, the prosecutor told potential jurors that they would hear accomplice testimony. He asked the jurors if the fact that an accomplice was involved in the crime and made a deal with the state would affect their ability to judge their testimony. During his opening statement, the prosecutor stated that Josh Barrow would testify that he was with the defendant and Roddy prior to the killing. The prosecutor also stated that Nick Babin, who was charged with accessory after the fact to murder, would testify that he and Barrow went to his house to get the shotgun and brought it back to Roddy and the defendant. Babin would also testify that he was called to dispose of the murder weapon after the defendant, Roddy, and Barrow were arrested. At trial, neither Barrow nor Babin were called to the stand to testify.
According to the defendant, it was evident that defense counsel anticipated the State would call Barrow and Babin because both witnesses had been called during the trial of Lucas Roddy.[4] The prosecutor capitalized on this misrepresentation by offering the content of Barrow and Babin's statements, as well as their guilty pleas, without calling the witnesses to testify. The defendant contends the defense was "sandbagged into not objecting believing it would have the opportunity to cross-examine the witnesses the state said it would bring forth."
The defendant further contends that testimony by other witnesses about what Barrow had said was inadmissible testimonial hearsay. The defendant complains of three instances of hearsay. On direct examination, Detective Sergeant Mike Toney testified that Barrow gave them a possible location of where the weapons were hidden, namely at the Babin residence. On redirect examination, when asked what Barrow told law enforcement about his conversation with the defendant in jail, Toney testified that if Barrow got out of jail, the defendant wanted Barrow to dispose of the 30-30 rifle, which was at the Babin residence. On direct examination, Major Benny Delaune testified that Barrow had told the police that he had spoken to the defendant, and the defendant said that if Barrow got out, the 30-30 was at Nick's house, and to get rid of it.
Regarding these alleged errors raised by the defendant  the prosecutor's failure to call witnesses referred to in voir dire and his opening statement, prosecutorial misconduct, and the hearsay testimony elicited by the prosecutor  defense counsel did not object to any of them, nor did he move for a mistrial.[5] Accordingly, the defendant has waived any error based on these allegations by his failure to move timely for a mistrial or enter a contemporaneous objection. See La. C.E. art. 103(A)(1); La. C.Cr.P. art. 841(A); State v. Sisk, 444 So.2d 315, 316 (La. App. 1st Cir. 1983), writ denied, 446 So.2d 1215 (La. 1984). See also State v. Morris, 429 So.2d 111, 118-19 (La. 1983); State v. Hawkins, 633 So.2d 301, 307 (La. App. 1st Cir. 1993); State v. Lowery, 33,905, pp. 25-26 (La. App. 2d Cir. 2/28/01), 781 So.2d 713, 732, writ denied, XXXX-XXXX (La. 2/22/02), 809 So.2d 978; State v. Sepcich, 473 So.2d 380, 386 (La. App. 5th Cir. 1985).

SECOND ASSIGNMENT OF ERROR
In his second assignment of error, the defendant argues that defense counsel was ineffective in failing to object to the prosecutor's use of testimonial hearsay concerning the content of Barrow's and Babin's statements[6] at trial and in failing to request a mistrial. Accordingly, the defendant was deprived of his Sixth Amendment right to confront his accusers.[7]
In Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), the United States Supreme Court enunciated the test for evaluating the competence of trial counsel:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
In evaluating the performance of counsel, the inquiry must be whether counsel's assistance was reasonable considering all the circumstances. State v. Morgan, 472 So.2d 934, 937 (La. App. 1st Cir. 1985). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. State v. Robinson, 471 So.2d 1035, 1038-39 (La. App. 1st Cir.), writ denied, 476 So.2d 350 (La. 1985).
A claim of ineffective assistance of counsel is more properly raised by an application for postconviction relief in the district court, where a full evidentiary hearing may be conducted. However, where the record discloses sufficient evidence to decide the issue of ineffective assistance of counsel when raised by assigmnent of error on appeal, it may be addressed in the interest of judicial economy. State v. Carter, 96-0337, p. 10 (La. App. 1st Cir. 11/8/96), 684 So.2d 432, 438.
In the instant matter, the allegations of ineffective assistance of counsel cannot be sufficiently investigated from an inspection of the record alone. Whether or not to object to certain testimonial statements made by Detective Sergeant Toney or Major Delaune regarding what Barrow had told them could have involved matters of trial strategy.[8] However, decisions relating to investigation, preparation, and strategy cannot possibly be reviewed on appeal. Only in an evidentiary hearing in the district court, where the defendant could present evidence beyond what is contained in the instant record, could these allegations be sufficiently investigated.[9] Accordingly, these allegations are not subject to appellate review. See State v. Albert, 96-1991, p. 11 (La. App. 1st Cir. 6/20/97), 697 So.2d 1355, 1363-64. See also State v. Johnson, 06-1235, p. 15 (La. App. 1st Cir. 12/28/06), 951 So.2d 294, 304.

FIRST AND SECOND PRO SE ASSIGNMENTS OF ERROR
In his first pro se assignment of error, the defendant argues there was police misconduct in the coercion of witnesses. In his second pro se assignment of error, the defendant argues there was prosecutorial misconduct because the prosecutor "disallowed" the witnesses to testify to the truth and forced them to read from the statements coerced from law enforcement officials. There is no delineation of these assignments of error in the defendant's pro se brief. Because of this, and because they are interrelated, we address them together.
The defendant alleges the District Attorney promised Gabriel Allen that if he would testify, his charges would be reduced. This assertion is meritless. Allen testified that about a week or two prior to the shooting, the defendant had shown him the 30-30 Marlin rifle. The "charges" to which the defendant is referring was Allen's conviction for possession of marijuana. Allen testified that he gave his statement to the police about the rifle before the marijuana charge. Moreover, Allen testified that he was not offered anything for his testimony, but instead came forth with the information because Villar was his uncle:
Q. All right. Did you make any deals with the prosecution concerning the marijuana charge?
A. No, sir.
Q. In fact, have you ever talked to me before?
A. No, sir.
Q. You ever saw me before?
A. No, sir.
Q. Okay. Did anyone from the district attorney's office promise you anything for your testimony?
A. No, sir.
Q. And, in fact, sir, didn't you call up and call the sheriff's office when you found out who got killed and what happened and volunteer this information?
A. Yes, sir.
Q. And why did you do that?
A. Because Luke [Villar] was my uncle.
The defendant next alleges that Justin Smith's testimony proved the police were not trying to seek the truth, but were trying to fabricate a case against him (defendant). The defendant further asserts that the prosecutor attempted to force Smith to testify falsely. On direct examination by the prosecutor, Smith gave vague, incomplete responses about whom the defendant arrived with at his (Smith's) house. Smith also testified that he did not notice when the defendant and Roddy left his (Smith's) house. The prosecutor had Smith refresh his memory by reviewing a statement he had given to the police shortly after the shooting. Upon having his memory refreshed, Smith testified that the defendant, Barrow, Roddy, and Babin arrived at his party in Christy Myers's vehicle. Smith also testified, according to the police report, that at about a quarter to five, Barrow, Roddy, and the defendant had already left his house. He further testified, however, that he did not see them leave.
We find nothing inappropriate in the prosecutor's handling of this witness. Smith used the police report to refresh his memory. The prosecutor was entitled to examine Smith as to the portions of the report to which he referred in his direct testimony. See La. C.E. art. 612(B). We further find nothing in the record to suggest misconduct by the police when they interviewed Smith.
Finally, the defendant alleges that the prosecutor solicited false testimony from Amber Killian and knew or should have known it to be false. Killian testified that she put the defendant's shirt in Babin's closet. The defendant claims this contradicted the State's "facts" because "they stated they had found the alleged clothes worn in the incident in a BBQ pit" at another home. Initially, we note it was the defendant himself who told the police that Roddy and Barrow removed their long sleeve shirts, and that he (the defendant) hid the clothing in Babin's barbecue pit. Moreover, Killian testified as to where she put the defendant's shirt. The clothes in the BBQ pit allegedly belonged to Roddy and Barrow. Accordingly, this assertion is meritless.
Killian also testified that, while she saw the defendant walking toward Myers's car, she did not see him actually get in it. This testimony conflicted with her statement to the police, wherein she stated she saw the defendant with a gun in a car with Roddy and Barrow. On recross-examination, Killian testified she simply assumed the defendant was walking to the car. Killian was then asked, "Did you have any assistance in arriving at that assumption from the police or anybody else in preparation for that testimony?" In his pro se brief, the defendant states that Killian responded, "[w]ell, they [detectives] kind of make you tell a story" and concludes that the prosecutor solicited false testimony. This assertion is meritless. The prosecutor was trying to either refresh Killian's memory or impeach her testimony. Regardless, nothing in these facts suggests the prosecutor solicited false testimony. In fact, on redirect examination, the prosecutor afforded Killian the opportunity to explain the discrepancy in her answers. Also, Killian made clear there was no coercion by the police:
Q. Did the detectives force you to give your sworn testimony at the trial?
A. No, sir.
Q. Wasn't that me asking the questions?
A. Yes, sir.
Q. Wasn't the judge sitting right there?
A. Yes, sir.
Q. Wasn't there 12 people sitting right there or 13?
A. Yes, sir.
Q. And who forced you to say that under oath with the court reporter that day?
A. I was trying to follow my statement to the police.
Q. Are you saying that you've been coerced into giving that statement?
A. No, sir.
Q. Are you saying that Justin Granier didn't have a gun?
A. No, sir.
Q. What are you saying? I don't understand.
A. All I'm saying is I don't know for sure if he got in the car and left with 
Q. But you do know he had a gun 
A. Right.
Q.  at Justin Smith's party?
A. Right.
The defendant has made no showing of police or prosecutorial misconduct. These pro se assignments of error are without merit.

THIRD PRO SE ASSIGNMENT OF ERROR
In his third assignment of error, the defendant argues that the trial court erred in denying his motion to suppress his statements. Specifically, the defendant asserts that his second statement to the police should have been excluded from evidence because the police used threats, promises, and intimidation to obtain that statement.
We find nothing in the record to substantiate the defendant's claim. In denying the motion to suppress, the trial court made the following findings:
This Court finds based on the evidence that the statements were made by the defendant after he had been fully advised of his Miranda rights. Each time the defendant was questioned he was read the Ascension Parish Sheriffs Department Advice of Rights Form, which he also signed. This Court also finds that the defendant was not under the influence of drugs or alcohol during the questioning and that he was not coerced, threatened or deceived in any way. Thus, this Court finds that the defendant's waiver of his Miranda rights and subsequent incriminating statements were made freely and voluntarily.
This Court also finds that the defendant was advised that he could either contact his own personal lawyer or that one could be appointed to him and that he never indicated that he wished to pursue either option.
There was no abuse of discretion in the trial court's denial of the motion to suppress. The trial court's ruling is fully supported by the record. Accordingly, this pro se assignment of error is without merit.

FOURTH PRO SE ASSIGNMENT OF ERROR
In his fourth assignment of error, the defendant states "Insufficient evidence." The defendant has failed to brief this assignment of error. Accordingly, it is considered abandoned and will not be addressed by this court. See Uniform Rules  Courts of Appeal, Rule 2-12.4.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] This part of the defendant's statement was determined to be false. Based on the investigation by the police, as well as Barrow's own statement to the police, it was clear that the defendant, Roddy, and Barrow were at Delaune's during the shooting.
[2] The rifle had been stolen from Paul Braun.
[3] The defendant contends that the actions of the prosecutor were in violation of Rule 3.4(e) of the Rules of Professional Conduct, which, in pertinent part, prohibits a lawyer from alluding to any matter at trial that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence.
[4] See State v. Roddy, XXXX-XXXX (La. App. 1st Cir. 12/22/05).
[5] We realize defense counsel could not have objected to the prosecutor's remarks during voir dire and his opening statement. However, at the conclusion of trial, when it was clear that certain witnesses referred to by the prosecutor were not called, defense counsel could have objected or moved for a mistrial, but failed to do so. See Sisk, 444 So.2d at 316.
[6] In his brief, the defendant does not make any references to witness testimony concerning any specific statements made by Babin. The only alleged hearsay addressed by the defendant are statements made by Barrow, as discussed in the first assignment of error.
[7] In footnote 5 of his brief, the defendant states, "Counsel's ineffectiveness on only this single point is argued."
[8] For example, if Barrow told the police that he (Barrow) told the defendant where the 30-30 rifle was hidden and to get rid of it if he got out of jail, then this might suggest that the defendant did not have knowledge of where the rifle was hidden, which, in turn, would suggest the defendant's minimal involvement with the shooting, at least insofar as the defendant being the shooter. In other words, it is arguable that this testimony, which coincided with the defendant's testimony at trial wherein he denied hiding the guns, was favorable to the defendant and, as such, would not have been objectionable.
[9] The defendant would have to satisfy the requirements of La. C.Cr.P. art. 924, et seq., in order to receive such a hearing.