STATE OF LOUISIANA
v.
LEOTHER DUPAS.
No. 2009 KA 0264.
Court of Appeals of Louisiana, First Circuit.
September 11, 2009.
Not Designated for Publication
HILLAR C. MOORE, III, District Attorney, STACY L. WRIGHT, Assistant District Attorney, Counsel for Appellee, State of Louisiana.
FREDERICK KROENKE, Louisiana Appellate Project, Counsel for Defendant/Appellant, Leother Dupas.
Before: CARTER, C.J., GUIDRY, and PETTIGREW, JJ.
GUIDRY, J.
The defendant, Leother Dupas, was charged by bill of information with attempted second degree murder, which was subsequently amended to aggravated second degree battery, a violation of La. R.S. 14:34.7. The defendant pled not guilty and, following a jury trial, was found guilty as charged. He was sentenced to fifteen years at hard labor. The defendant now appeals, designating three assignments of error. We affirm the conviction and sentence.

FACTS
Kiera Moore lived in an apartment off of O'Neal Lane in Baton Rouge. She was in a relationship with the defendant, who stayed with her at the apartment about three days a week. On December 1, 2007, Kiera was preparing to go to a gospel concert with a friend. She had an iron plugged in to iron her pants. She took a shower and entered her bedroom, where the defendant was sitting on her bed. She told the defendant he needed to step out of her bedroom. The defendant refused, then rushed at Kiera and pushed her into the dresser. He grabbed the hot iron and pressed it to her face, arm, and back. Kiera tried to escape out of the front door, but the defendant grabbed her and dragged her down the hallway. Kiera picked up a lamp and hit the defendant with it. The defendant continued to drag her to the kitchen, where he grabbed a knife out of a drawer and tried to cut her neck. Unable to cut her neck, the defendant grabbed a Juicy Juice can and hit her on the head with it. Kiera ran toward the door and unlocked it. Before she could get out, the defendant hit her in the back of the head with a dining room chair. Kiera fled her apartment in the nude and was soon given assistance by neighbors. The defendant got in his truck and left. Kiera testified at trial that she did nothing to provoke the attack.
The defendant testified at trial that the night before the attack, he and Kiera got into a big argument. In the middle of the night, Kiera physically attacked him because he was seeing other people and talking on the phone to other people. He also testified that he did not intentionally burn her.
Kiera was taken to a burn unit in Baton Rouge. She was then released to a burn unit in Tennessee, where her mother lived. While there, she underwent treatment for her burns for two to three months. She also received injuries to her right hand, which required stitches. At trial, she testified that because of the burn injuries to her face, she still could not completely close her left eye. She also must wear a pressure mask twenty-three hours a day because of keloids that formed on her face.

ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, the defendant argues that the trial court erred in denying his challenge for cause of prospective juror Patricia Chambers. Specifically, the defendant contends that Ms. Chambers was biased and could not render a verdict according to law because her mother was a victim of domestic abuse.
Defense counsel raised a cause challenge against Ms. Chambers, but the trial court denied the challenge. Defense counsel objected to the trial court's ruling. Ms. Chambers was peremptorily struck by defense counsel. Thus, Ms. Chambers never served on the jury of the defendant's trial. It is not clear from the record whether defense counsel exhausted all of his peremptory challenges. Since this issue would be moot if all peremptory challenges had not been exhausted, we will presume defense counsel exhausted his peremptory challenges.[1]
An accused in a criminal case is constitutionally entitled to a full and complete voir dire examination and to the exercise of peremptory challenges. La. Const, art. I, § 17(A). The purpose of voir dire examination is to determine prospective jurors' qualifications by testing their competency and impartiality and discovering bases for the intelligent exercise of cause and peremptory challenges. State v. Burton, 464 So. 2d 421, 425 (La. App. 1st Cir.), writ denied, 468 So. 2d 570 (La. 1985). A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice, or inability to render judgment according to law may be reasonably implied. A trial court is accorded great discretion in determining whether to seat or reject a juror for cause, and such rulings will not be disturbed unless a review of the voir dire as a whole indicates an abuse of that discretion. State v. Martin, 558 So. 2d 654, 658 (La. App. 1st Cir.), writ denied, 564 So. 2d 318 (La. 1990).
A defendant must object at the time of the ruling on the refusal to sustain a challenge for cause of a prospective juror. La. C. Cr. P. art. 800(A). Prejudice is presumed when a challenge for cause is erroneously denied by a trial court and the defendant has exhausted his peremptory challenges. To prove there has been reversible error warranting reversal of the conviction, defendant need only show (1) the erroneous denial of a challenge for cause; and (2) the use of all his peremptory challenges. State v. Robertson, 92-2660, p. 7 (La. 1/14/94), 630 So. 2d 1278, 1280-1281. As noted, we presume that defense counsel exhausted all six of his peremptory challenges before the selection of the sixth juror.[2] Therefore, we need only determine the issue of whether the trial judge erred in denying the defendant's challenge for cause regarding prospective juror Ms. Chambers.
Louisiana Code of Criminal Procedure article 797, states in pertinent part:
The state or the defendant may challenge a juror for cause on the ground that:
....
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
....
(4) The juror will not accept the law as given to him by the court[.]
The prosecutor in the instant matter asked the prospective jurors if they or any close members of their family or friends had ever been the victim of a domestic violence crime. Ms. Chambers responded that her deceased mother had been the victim of domestic violence twice, namely when she was with Ms. Chambers's father and when she became involved with someone else after her father died. After some explanation by the prosecutor about the elements of aggravated second degree battery, the following colloquy between the prosecutor and Ms. Chambers took place:
Q. Do any of you hold any moral, ethical, or religious beliefs, or do you hold any type of beliefs knowing there is going to be something about domestic violence, without going more into detail about that, which makes it more difficult for you to serve upon this jury than you think the average person would have? And is there any reason you do not wish to serve upon a jury which is going to deal with a domestic violence-type situation? If that's the case, would you raise your hand? Let me get you a microphone. You are, Ms. Chambers?
A. Yes.
Q. The question is  you might be a fine juror for something else. But if you believe that serving upon this jury would be either harmful to you emotionally, or you don't believe you should serve for any reason 
A. [] I don't believe I should serve.
Q. You don't think you would be a fair juror?
A. Well, I  I suppose I might not  it might be a selfish kind of reason, but anyway, it's my reason. I don't suppose I want to go through what might possibly come in terms of whatever this is about. From an emotional, psychological standpoint I guess I would just prefer not. If I have a choice  if I have a choice, I would just prefer not, which might not be a good reason, because probably everybody would prefer not. But 
Q. Most people would rather be at work or some other 
A. Yes. Yes. I don't want to do this. And it's related to my mother and it's related to some personal things as well, which I didn't even bring up in here. But, you know, I don't know what else to say.
Q. I understand. The next question  I'm going to leave it at that and go on.
A. All right.
Later, the prosecutor asked the prospective jurors if they could convict if he proved the defendant was the actor, there was a battery, there was the use of a dangerous weapon, and the battery resulted in serious bodily injury. Ms. Chambers responded, "Yes." After the prosecutor tendered the jury panel, the following colloquy between defense counsel and Ms. Chambers, and then the trial court and Ms. Chambers, suggests that Ms. Chambers was rehabilitated:
Q. [defense counsel] Ms. Chambers, I want to ask you. And I'm not picking on you because you've been extremely honest and I appreciate the candor you've had with us today. If this case was about a domestic problem, would that bother you? Could you still be fair?
A. [] No.[3]
Q. And  and I just want to describe  because we are recording everything you say, but it's not going to  this recording is not going to pick up how long you paused and grimaced, almost, to answer this question.
A. Yeah.
....
Q. Now, I don't want you to be embarrassed. I just want you to tell how you feel. You obviously have had a traumatic experience with your mother and with the two men she has been married to and I want to know if it's going to have an effect on you in this case. Because this is a very, very serious case. ... So I just want to know what your true feelings are. Are you really going to be able to be fair?
A. Yes, I can be fair.
Q. And what you have experienced in the past will in no way have any direct reflection on what you do in this courtroom?
A. Right.
The Court: Are you in any way more likely to find the defendant, Mr. Dupas, guilty if this is a case about battery of people  on someone that the people may know each other; let's say a domestic violence-type case? Are you, in any way, more likely to find him guilty because of what you have been through in your personal life and what your mother has been through?
A. No. I can do it based on the four elements that this gentleman, the prosecutor, pointed out.
The Court: Can you put the personal experiences aside and decide this case solely upon what is proven from this courtroom  in this courtroom?
A. Yes, sir.
The Court: Are you sure you can do that?
A. Yes, sir.
Later, a juror told defense counsel he would like to hear the defendant testify. When defense counsel asked if any other juror felt that way, Ms. Chambers responded in the affirmative. The following colloquy between defense counsel and Ms. Chambers then took place:
Q. You do, Ms. Chambers?
A. Well, it's just natural that people want to hear. Certainly, you know, you look at the facts. But it's just natural people want to hear the story from the person who is the primary principal in the whole thing. But, you know, again, you're back to the facts. He said he wanted to hear from him and somebody said, so, you know, you go one, two, three, four, bam; whatever, make a decision.
Q. Take the microphone. . . . So, all of us bring into this courtroom our own life experiences. Okay? The important thing is  and the judge will even ask you  we all have life experiences. But in this case, I just need to know you are going to put it aside 
A. Right.
Q.  and be fair in this case.
A. Sure. Yes.
Q. And if he doesn't testify, you won't hold it against him?
A. Right.
Q. You are sure?
A. Yeah. You already said that 
Q. Now is the time to tell me.
A. Yeah. You already said that he wouldn't.
Q. Said he wouldn't what?
A. I think you said he wouldn't testify.
Q. No, I didn't say that.
A. Or he doesn't have to  or he didn't have to, I suppose.
Q. Right.
A. Okay.
The defendant argues that Ms. Chambers made it clear she had undergone some painful experiences regarding the domestic abuse of her mother and that, accordingly, she was biased and could not render a verdict according to law. Further, she gave no reason or explanation for her "later sudden and completely unexplained change in attitude."
The line-drawing in many cases is difficult. Accordingly, the trial court must determine the challenge on the basis of the entire voir dire, and on the trial court's personal observations of the potential jurors during the questioning. Moreover, the reviewing court should accord great deference to the trial court's determination and should not attempt to reconstruct the voir dire by a microscopic dissection of the transcript in search of magic words or phrases that automatically signify the jurors' qualification or disqualification. State v. Miller, 99-0192, p. 14 (La. 9/6/00), 776 So. 2d 396, 405-06, cert, denied, 531 U.S. 1194, 121 S.Ct. 1196, 149 L.Ed.2d 111 (2001).
A prospective juror's seemingly prejudicial response is not grounds for an automatic challenge for cause, and a trial court's refusal to excuse him on the grounds of impartiality is not an abuse of discretion, if after further questioning the potential juror demonstrates a willingness and ability to decide the case impartially according to the law and evidence. See State v. Lee, 559 So. 2d 1310, 1318 (La. 1990), cert, denied, 499 U.S. 954, 111 S.Ct. 1431, 113 L.Ed.2d 482 (1991); see also State v. Kang, 02-2812, pp. 8-9 (La. 10/21/03), 859 So. 2d 649, 655; State v. Copeland, 530 So. 2d 526, 534 (La. 1988), cert, denied, 489 U.S. 1091, 109 S.Ct. 1558, 103 L.Ed.2d 860 (1989). In denying the challenge for cause in this case, the trial court stated:
In making a credibility determination, on the answers to my specific questions, I think it is very clear that she could put the past experiences with her mother and family outside of her decision-making process in this case and decide this case solely upon the facts and the law.
We agree with this assessment by the trial court, which was in the best position to determine whether Ms. Chambers would discharge her duties as a juror. Ms. Chambers demonstrated a willingness and ability to decide the case impartially according to the law and evidence after further questioning by both defense counsel and the trial court. She indicated unequivocally she could be fair, she could put aside her personal experience and decide the case solely on what was proven at trial, and she would not hold against the defendant his decision not to testify. Upon reviewing the voir dire in its entirety, we cannot say the trial court abused its discretion in denying defense counsel's challenge for cause.
This assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 2 and 3
In these related assignments of error, the defendant argues, respectively, that the sentence imposed is excessive, and defense counsel's failure to file a motion to reconsider sentence constitutes ineffective assistance of counsel.
The record does not contain an oral or written motion to reconsider sentence.[4] Louisiana Code of Criminal Procedure article 881.1(E) provides that the failure to file or make a motion to reconsider sentence precludes the defendant from raising an excessive sentence argument on appeal. Ordinarily, pursuant to the provisions of this article and the holding of State v. Duncan, 94-1563, p. 2 (La. App. 1st Cir. 12/15/95), 667 So. 2d 1141, 1143 (en banc per curiam), we would not consider an excessive sentence argument. However, in the interest of judicial economy, we choose to consider the defendant's argument that his sentence is excessive, even in the absence of a motion to reconsider sentence, in order to address the defendant's claim of ineffective counsel. See State v. Wilkinson, 99-0803, p. 3 (La. App. 1st Cir. 2/18/00), 754 So. 2d 301, 303, writ denied, 00-2336 (La. 4/20/01), 790 So. 2d 631.
In Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), the United States Supreme Court enunciated the test for evaluating the competence of trial counsel:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
In evaluating the performance of counsel, the inquiry must be whether counsel's assistance was reasonable considering all the circumstances. State v. Morgan, 472 So. 2d 934, 937 (La. App. 1st Cir. 1985). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. State v. Robinson, 471 So. 2d 1035, 1038-39 (La. App. 1st Cir.), writ denied, 476 So. 2d 350 (La. 1985).
Failure to file a motion to reconsider sentence in itself does not constitute ineffective assistance of counsel. However, if the defendant can show a reasonable probability that, but for counsel's error, his sentence would have been different, a basis for an ineffective assistance claim may be found. State v. Felder, 00-2887, p. 11 (La. App. 1st Cir. 9/28/01), 809 So. 2d 360, 370, writ denied, 01-3027 (La. 10/25/02), 827 So. 2d 1173 (citing State v. Pendelton, 96-367, p. 30 (La. App. 5th Cir. 5/28/97), 696 So. 2d 144, 159, writ denied, 97-1714 (La. 12/19/97), 706 So. 2d 450).
The Eighth Amendment to the United States Constitution and Article I, section 20, of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So. 2d 762, 767 (La. 1979). A sentence is considered constitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Andrews, 94-0842, pp. 8-9 (La. App. 1st Cir. 5/5/95), 655 So. 2d 448, 454. The trial court has great discretion in imposing a sentence within the statutory limits, and such a sentence will not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Holts, 525 So. 2d 1241, 1245 (La. App. 1st Cir. 1988). Louisiana Code of Criminal Procedure article 894.1 sets forth the factors for the trial court to consider when imposing sentence. While the entire checklist of Article 894.1 need not be recited, the record must reflect the trial court adequately considered the criteria. State v. Brown, 02-2231, p. 4 (La. App. 1st Cir. 5/9/03), 849 So. 2d 566, 569.
The articulation of the factual basis for a sentence is the goal of Article 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with Article 894.1. State v. Lanclos, 419 So. 2d 475, 478 (La. 1982). The trial judge should review the defendant's personal history, his prior criminal record, the seriousness of the offense, the likelihood that he will commit another crime, and his potential for rehabilitation through correctional services other than confinement. See State v. Jones, 398 So. 2d 1049, 1051-52 (La. 1981).
In the instant matter, the trial court imposed the maximum sentence of fifteen years at hard labor. This court has stated that maximum sentences permitted under statute may be imposed only for the most serious offenses and the worst offenders, or when the offender poses an unusual risk to the public safety due to his past conduct of repeated criminality. State v. Hilton, 99-1239, p. 16 (La. App. 1st Cir. 3/31/00), 764 So. 2d 1027, 1037, writ denied, 00-0958 (La. 3/9/01), 786 So. 2d 113. The defendant contends that, while this may have been one of the worst offenses, he is clearly not one of the worst offenders.
At sentencing, the trial court stated in pertinent part:
What concerns me about that, sir, is that you still seem to be trying to make the victim in this case out to be the one that is mostly at fault here, and I find that to be unbelievable. I have reviewed the presentence report. I have reviewed the facts of this case. ... I have considered your social history, your family history that's contained in the presentence report.
....
And you are a first-felony offender. And I take all of that into consideration. This appears to be your first arrest. I take that into consideration. And sometimes that's a very important consideration. In this case ... the heinousness of this crime far outweighs the mitigating factors that I have considered, such as your lack of any significant criminal record. In reviewing the facts of this case  and yesterday I pulled the evidence with the photographs to review those, and the harm and torture that you inflicted on this victim in this case is one of the most heinous offenses and horrible things that someone could do to a woman that I have ever seen. And I have been in this business for over twenty-five years in the criminal law area. . . . The photographs in this case show the injuries . . . that you intentionally inflicted upon the victim in this case, and it is  the pain and suffering that you caused is almost unimaginable. The fact that you testified in this case and gave a story that is totally unbelievable  the jury didn't believe it, I didn't believe it  that this was somehow accidental, that's incredible when you look at the facts and the evidence that was presented in this case. I have no doubt that you perjured yourself on the witness stand when you testified. You have caused harm to this victim that she will live with for the rest of her life. In considering the sentencing guidelines . . ., I do find any lesser sentence than the one I am about to impose would deprecate the seriousness of this offense....You knowingly created a risk in this case of death and  and certainly created the great bodily harm that was proven by the State. Torture is the only word that I can use to describe how heinous your conduct was in this case. To take  to take a hot iron and place it on that young woman's face repeatedly, and on her body, is one of the most despicable acts that I can think of that you could have done to this person. And the severe burns that were caused on her face and on her body that she still has to live with today is one of the most shameful things I have ever seen done, sir. Your conduct showed absolutely no concern for the safety and well[-]being of the victim. . .. You still have not... accepted responsibility for your actions  even though you make ... somewhat of an apology to the victim in your statement to the probation office. I will state for the record that if I could give you more time in this case, I would. But, I can't.
Considering the trial court's careful review of the circumstances, the presentence investigation report, and the nature of the crime, we find no abuse of discretion by the trial court. The trial court provided ample justification in imposing the maximum sentence allowed by law. We have closely reviewed the trial testimony and the photographs of the victim's injuries submitted into evidence and find this horrific crime committed by the defendant extreme in its ruthlessness. Based on committing what we find to be the worst type of offense in the category of aggravated second degree battery, wherein the defendant brutalized his female victim with a hot iron, we find him to be the worst type of offender. See State v. Mickey, 604 So. 2d 675, 679 (La. App. 1st Cir. 1992), writ denied, 610 So. 2d 795 (La. 1993). Accordingly, the sentence imposed is not grossly disproportionate to the severity of the offense and, therefore, is not unconstitutionally excessive.
Because we find the sentence is not excessive, defense counsel's failure to file or make a motion to reconsider sentence, even if constituting deficient performance, did not prejudice the defendant. See Wilkinson, 99-0803 at 3, 754 So. 2d at 303; Robinson, 471 So. 2d at 1038-39. His claim of ineffective assistance of counsel, therefore, must fail. These assignments of error are without merit.

CONCLUSION
Thus, having thoroughly reviewed the record and considered the arguments raised by the defendant, we find no merit in any of the errors assigned. Accordingly, we affirm the defendant's conviction and sentence for the crime of aggravated second degree battery, a violation of La. R.S. 14:34.7.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The State filed a motion to supplement the appellate record with a transcript of the entire voir dire in this matter to determine if the defendant exhausted all of his peremptory challenges. As the State notes in its brief, the voir dire supplement still does not indicate whether the defendant exhausted all of his peremptory challenges.
[2] The crime of aggravated second degree battery is punishable by imprisonment with or without hard labor. La. R.S. 14:34.7(B). Cases in which the punishment may be confinement at hard labor shall be tried by a jury composed of six jurors. La. C. Cr. P. art. 782(A). In cases where the offense is not punishable by death or necessarily by imprisonment at hard labor, each defendant shall have six peremptory challenges. See La. C. Cr. P. art. 799.
[3] Given the entirety of the colloquies between Ms. Chambers and defense counsel and the trial court, it is probable that her negative response was to the first question, "[i]f this case was about a domestic problem, would that bother you?"
[4] At the conclusion of the sentencing, the trial court asked defense counsel, "And did you say you objected to the sentence?" Defense counsel responded, "Yes, sir." Defense counsel's objection did not constitute an oral motion to reconsider sentence. Moreover, a general objection to a sentence without stating specific grounds, including excessiveness, preserves nothing for appellate review. See State v. Bickham, 98-1839, p. 6 (La. App. 1st Cir. 6/25/99), 739 So. 2d 887, 891.