739 So.2d 887 (1999)
STATE of Louisiana
v.
Ronald BICKHAM.
No. 98 KA 1839.
Court of Appeal of Louisiana, First Circuit.
June 25, 1999.
*888 Walter P. Reed, District Attorney, Covington, Dorothy Pendergast, Metairie, for Appellee, State of Louisiana.
Frank Sloan, Covington, for Defendant/Appellant, Ronald Bickham.
Before: CARTER, C.J., SHORTESS, and WHIPPLE, JJ.
CARTER, C.J.
Following his conviction for armed robbery, Ronald Bickham was charged, adjudged, and sentenced as a second felony habitual offender to imprisonment at hard labor for sixty years without benefit of parole. In this appeal, defendant appeals his habitual offender adjudication and sentencing, urging two assignments of error. Separately, defendant appealed his conviction. See State v. Bickham, No. 98-1838, also decided this date, in which we affirmed defendant's conviction.
At about 6:30 a.m. on October 3, 1997, Mary DeSalvo, the victim of the instant offense, left home in Lacombe, Louisiana, and drove her 1995 green Dodge Neon to a store to purchase coffee and a doughnut. After making her purchase, she proceeded to go home. Along the way, she stopped her car at the intersection of North Pontchartrain and U.S. 190 before making a right turn from U.S. 190 onto North Pontchartrain. It was at this point that defendant entered DeSalvo's car from the passenger side door. DeSalvo completed her turn. Shortly after defendant got into the car, DeSalvo became aware he was armed with what she referred to as a "box cutter, razor knife." Defendant demanded her money. She gave him her purse and informed him she had only five dollars. Defendant told DeSalvo the money she had was not enough, to go to the bank, and to speed up. He began swinging the knife. DeSalvo used her left hand to shield her face and throat from getting cut. Defendant cut her left hand. It was while he *889 was cutting her that he threatened to kill her. After defendant inflicted a second cut to her hand and a cut across her face, DeSalvo in fear of losing her life opened the driver's side door of the car with her right hand.[1] Defendant grabbed her by her shirt and tried to pull her back to prevent her from getting out of the car. During this struggle, her shirt came off, leaving her naked from the waist up. She hit the ground with her left hand and the left side of her face, rolled, and got up. When she looked back as she was running away she saw her car being driven down North Pontchartrain.
After running to a nearby house which apparently was unoccupied, the victim ran to the trailer of Angie Martinez. The victim was hysterical and crying as she banged on Martinez's door. Martinez allowed the victim to come inside her home, assisted her, and called emergency 911.
The police quickly responded to the report of the instant offense. St. Tammany Parish Deputy Sheriff Wayne Wicker and Patrick McCormick received information at about 6:55-7:00 a.m. that morning concerning the crime, which included a description of the victim's car. The officers departed in their respective police units in search of the victim's car. While on 1-12 eastbound, McCormick spotted the victim's Neon being driven on 1-12. McCormick activated the emergency lights and siren on his police unit in an attempt to stop the Neon, which did not stop. A high speed chase on 1-12, at times in excess of one hundred miles per hour, followed.
The Neon exited 1-12 at the Ablta Springs exit, where Wicker was waiting in his police unit at the intersection of LA 59 and 1-12. However, Wicker was unsuccessful in stopping the Neon, which continued on LA 59 northbound with McCormick still in pursuit. According to McCormick, on LA 59, forty to fifty other vehicles were forced off the road in order to avoid a collision with the Neon or to lessen the danger of such a collision.
When McCormick's unit and the Neon approached Harrison Road, Deputy Billy Lee, who was on Harrison Road, pulled out in an attempt to stop the Neon. The Neon traveled around Lee's unit, hit a pickup truck, and continued west on Harrison Road at extremely high rates of speed.
To terminate the pursuit, McCormick forced the Neon off the road into a ditch near Arrow Wood Subdivision. Defendant exited the Neon and fled on foot eluding McCormick and Wicker who were also there. Defendant was pursued to a wooded lot. A perimeter was set up to prevent defendant's escape.
Deputy Darrell Dutsch, the handler for K-9 Rommel, was summoned and arrived with the dog. After defendant ignored several orders by Dutsch to come out or face the release of K-9 Rommel, the dog was released and quickly located defendant, who apparently was hiding in some thick underbrush, and took hold of defendant's left arm. After the dog was called off, officers moved in and handcuffed defendant, who was placed under arrest and advised of his Miranda rights.

ASSIGNMENT OF ERROR NO. 1
In this assignment, defendant contends that his 1990 guilty plea to simple robbery, the predicate offense used to enhance the instant conviction, cannot validly be utilized as a predicate, because the court that accepted the predicate guilty plea misinformed him of the sentencing range for the simple robbery. Because of the alleged invalid predicate, defendant concludes that his habitual offender adjudication must be reversed and his sentence must be vacated.
In State v. Shelton, 621 So.2d 769, 779-780 (La.1993), the Supreme Court stated the following:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of *890 the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights.
(Footnotes omitted.)
Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), requires that a trial court ascertain, before accepting a guilty plea, that defendant has voluntarily and knowingly waived his right against self-incrimination, his right to a jury trial, and his right to confrontation. Contrary to defendant's assertions, Boykin only requires that a defendant be informed of the three rights enumerated above. State v. Smith, 97-2849, p. 3 (La.App. 1st Cir.11/6/98); 722 So.2d 1048. Furthermore, Boykin does not require that a defendant be advised of the sentencing range of an offense to which a defendant enters a guilty plea. See State v. Fields, 95-2481, p. 5 (La.App. 1st Cir.12/20/96); 686 So.2d 107, 109.
At the habitual offender hearing herein, the state introduced into evidence copies of the pertinent court minutes evincing the taking of the plea, the bill of information relating to the predicate offense, and the pen pack. Defendant introduced into evidence the Boykin transcript at which the plea was entered. These documents showed that defendant entered counseled guilty pleas to two counts of simple robbery pursuant to a plea agreement providing for the imposition of concurrent sentences of three years imprisonment at hard labor, that the pleas were tendered with full advice of Boykin rights and a voluntary and knowing waiver of those rights, and that defendant received the agreed upon sentences.
While it is correct that the Boykin transcript reflects that the court erroneously advised defendant of the sentencing range for simple burglary rather than for simple robbery, as previously stated the simple robbery guilty pleas were made in exchange for specifically agreed upon sentences of three years running concurrently.[2] Additionally, following the erroneous advice and prior to accepting the pleas, the court engaged in a colloquy with defendant and defense counsel. During the colloquy, defendant unequivocally indicated he had discussed the plea agreement thoroughly with defense counsel and that he understood the plea agreement, found it acceptable, and had no questions about it. Likewise, defense counsel acknowledged he had discussed the charges thoroughly with defendant, including the maximum and minimum sentences for the original charges of armed robbery and for the reduced charges of simple robbery. Defense counsel *891 further acknowledged that the terms of the plea agreement as stated by the court were in accord with defense counsel's discussions with defendant, that it was counsel's opinion defendant understood the agreement and the nature of the charges, and that defendant's guilty pleas were freely and voluntarily entered. Clearly, under these circumstances, any misinformation supplied by the court concerning the sentencing range for the simple robbery pleas was harmless and did not undercut the voluntariness of these guilty pleas. Accordingly, this assignment is completely devoid of any merit.

ASSIGNMENT OF ERROR NO. 2
In this assignment, defendant contends that his second felony habitual offender sentence is unconstitutionally excessive.
Our review of the record shows that it does not contain a copy of a motion to reconsider sentence or evidence that defendant orally moved for reconsideration of the sentence. The failure to file or make a motion to reconsider sentence precludes a defendant from raising an objection to the sentence on appeal. See LSA-C.Cr.P. art. 881.1 D; State v. Duncan, 94-1563, p. 2 (La.App. 1st Cir.12/15/95); 667 So.2d 1141, 1143 (en banc per curiam).
Recently, in State v. Jones, 97-2521, p. 2 (La.App. 1st Cir.9/25/98); 720 So.2d 52, 53, we held that a defendant who made a general oral motion to reconsider his armed robbery sentence at sentencing[3] and later timely filed a written motion to reconsider sentence, urging in the written motion only that he had been convicted of the offense and sentenced to thirty years imprisonment at hard labor, was precluded appellate review of his assignment of error alleging an excessive sentence. While a contemporaneous objection to a sentence on excessiveness grounds alone preserves a bare claim of excessiveness (see State v. Caldwell, 620 So.2d 859 (La.1993); State v. Mims, 619 So.2d 1059 (La.1993)), in light of those cases, the clear and unequivocal wording of LSA-C.Cr.P. art. 881.1 D,[4] and our holding in State v. Jones, we have no difficulty concluding that a general objection to a sentence preserves nothing for appellate review.
Herein, defense counsel objected to the habitual offender sentence stating: "[W]e would respectfully object to the court's ruling." However, defense counsel did not voice any particular objection to the sentence. Thus, defendant's failure to urge a claim of excessiveness or any other specific ground for reconsideration of the sentence by oral or written motion at the trial court level precludes our review of his claim of sentence excessiveness.
However, defendant further argues that if his trial counsel failed to properly preserve his excessiveness claim such failure constitutes ineffective assistance of counsel.
Regarding this further argument, we note that a claim of ineffective counsel is more properly raised by an application for post-conviction relief in the district court where a full evidentiary hearing may be conducted. State v. Hicks, 554 So.2d 1298, 1306 (La.App. 1st Cir.1989), writs denied, 559 So.2d 1374 (La.1990) and 604 So.2d 1297 (La.1992). However, where the record discloses evidence needed to decide the issue of ineffective assistance of counsel and that issue was raised by assignment of error on appeal, the issue may be *892 addressed in the interest of judicial economy. State v. Bourgeois, 451 So.2d 172, 174 (La.App. 1st Cir. 1984), writ denied, 457 So.2d 18 (La.1984).
The United States Supreme Court has established a two-part test for review of a convicted defendant's claim that his counsel's assistance was so defective as to require reversal of a conviction [or death sentence]. In Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), the court stated:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). However, the trial court has great discretion in imposing a sentence within the statutory limits; and such a sentence will not be set aside as excessive in the absence of manifest abuse of discretion. State v. Latiolais, 563 So.2d 469, 473 (La.App. 1st Cir.1990).
Under the provisions of LSA-R.S. 15:529.1 A(1)(a) and 14:64 B defendant's sentencing exposure as a second felony habitual offender for the armed robbery was imprisonment at hard labor without benefit of parole for not less than forty-nine and one-half years and not more than one hundred ninety-eight years. Defendant received a sentence of sixty years imprisonment without parole.
The record reflects that the trial court ordered and received a presentence investigation (PSI) report and considered its contents in imposing sentence. The PSI reveals defendant was born on March 16, 1966, and reflects defendant's status as a second felony offender based upon defendant's two 1990 guilty pleas to the reduced charges of simple robbery. The PSI discloses that those two felony convictions involved the use of a gun and the striking of the robbery victims, which is consistent with defendant's conduct in the instant case in which he inflicted several cuts to Ms. DeSalvo. Noting that it was fortunate that no one had been killed or seriously injured by defendant, the PSI recommended that defendant receive a very lengthy term of incarceration for the instant offense.
The record reflects that the trial court considered defendant's background together with other appropriate sentencing considerations and the facts of the instant armed robbery in imposing this sixty year second felony habitual offender sentence for the instant crime of armed robbery. Based on the entire record, we are convinced the instant sentence was tailored to this defendant and this particular crime and is supported by the record. See LSA-C.Cr.P. art. 881.4 D. Accordingly, we find no abuse of sentencing discretion by the court, and, thus, defendant's sentence is not unconstitutionally excessive.
Consequently, even assuming, arguendo, defendant's trial counsel's failure to properly preserve defendant's claim alleging sentence excessiveness constituted deficient performance, defendant clearly suffered no prejudice herein as the instant sentence is not excessive.
This assignment lacks merit.
HABITUAL OFFENDER ADJUDICATION AND SENTENCE AFFIRMED.
SHORTESS, J., concurs with reasons.
*893 SHORTESS, J., concurring.
While I disagree with the majority's opinion regarding waiving of appeal rights for the review of defendant's reconsideration-of-sentence assignment of error, here there has been no prejudice because defendant received complete appellate review of this assignment of error in the treatment of his ineffective-assistance-of-counsel argument.
I respectfully concur.
NOTES
[1] According to the victim, none of the cuts she received required suturing.
[2] Simple burglary is punishable by a maximum fine of $2,000 and/or imprisonment with or without hard labor for a maximum of twelve years. See LSA-R.S. 14:62. On the other hand, the penalties for simple robbery are a maximum fine of $3,000 and/or imprisonment with or without hard labor for a maximum of seven years. See LSA-R.S. 14:65 B.
[3] The general oral motion to reconsider sentence was as follows: "Your Honor, at this time we would orally move for a reconsideration."
[4] LSA-C.Cr.P. art. 881.1 D provides as follows:

Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review. (Emphasis ours.)