STATE OF LOUISIANA
v.
GARY HEBERT, JR.
No. 2008 KA 0118.
Court of Appeal of Louisiana First Circuit.
June 6, 2008.
NOT DESIGNATED FOR PUBLICATION
CAMILLE A. MORVANT, II, District Attorney, STEPHEN E. CAILLOUET Asst. District Attorney, Thibodaux, LA, Counsel for Appellee State of Louisiana.
AUTUMN A. TOWN, New Orleans, LA, Counsel for Defendant/Appellant Gary Hebert, Jr..
BEFORE: PARRO, KUHN, AND DOWNING, JJ.
DOWNING, J.
The defendant, Gary Hebert, Jr., was charged by grand jury indictment with one count of second degree murder, a violation of La. R.S. 14:30.1. He pled not guilty. Following a jury trial, he was found guilty as charged. He moved for a new trial, but the motion was denied. He was sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. Additionally, the trial court designated the crime involved as a crime of violence and imposed restrictions concerning diminution of sentence for good behavior. See La. Code Crim. P. art. 890.1; La. R.S. 14:2(B)(3). He now appeals, designating five assignments of error. We affirm the conviction and sentence.

ASSIGNMENTS OF ERROR
1. The defendant was denied his right to due process of law guaranteed under La. Const, art. I, § 2 and U.S. Const, amends. V and XIV because there was insufficient evidence to support the guilty verdict.
2. The defendant was denied his right to due process of law under La. Const, art. I, §§ 2, 13, 16, and 20 and U.S. Const, amends. V, VIII, and XIV because the State committed prosecutorial misconduct by personally attacking the credibility of a trial witness.
3. The defendant was denied his constitutional right to present a defense under La. Const, art. I, §§ 2 and 16, and U.S. Const, amends. V and XIV because the trial court curtailed cross-examination of a State witness by the defense.
4. The sentence of life at hard labor imposed on the defendant is cruel and unusual punishment in violation of La. Const, art. I, § 20 and U.S. Const. amend. VIII because it is excessive, arbitrary, capricious, and disproportionate based on the facts alleged and the crime charged.
5. The defendant respectfully requests review of the entire record for error pursuant to La. Code Crim. P. art. 920(2).

FACTS
On January 21, 2004, the victim, Lervern "Barry" Charles, Jr., age twenty, was riding as a passenger in a vehicle driven by his mother, Reverend Janice Charles, on U.S. Highway 90. Reverend Charles stopped her Ford Expedition because there was a white man (Slicker) beating a black man (Bailey) with a pool stick on U.S. Highway 90 as a result of events which had occurred on January 20, 2004. Shortly after Bailey got into the vehicle, the victim was shot and killed.
On January 20, 2004, Blaine Smith and Heather Chester went to play pool at Somme's Lucky 7 (Somme's) in Des Allemands. Sean "Corn Row" was already at Somme's and joined in the pool game. Thereafter, Richard Mills and the defendant arrived at Somme's and also joined in the pool game.
After playing pool, Chester and her friend, Crystal, went to get some clothes from Chester's house, and Smith, Corn Row, Mills, and the defendant went to the defendant's house, located next to Somme's. Subsequently, Chester and Crystal arrived at the defendant's house. Sean "Toast Bread" Gomez also arrived at the defendant's house. Thereafter, Mills accused Smith of stealing his Mad Dog 20/20. Smith, Chester, and Crystal left the defendant's house to let Mills calm down, but drove back to Somme's later that night. Before Smith, Chester, and Crystal arrived at Somme's, Gomez approached their vehicle and also accused Smith of stealing Mills's alcohol. Smith hit Gomez in the head with a bat, and Gomez ran away.
On January 21, 2004, Smith returned to Somme's with his cousin, Elgin Bailey, and Chester. Mills was already at Somme's. According to Smith, he, Bailey and Chester learned the cue ball was lost and were leaving when the defendant, Milton Leroy "Bubba Bliz" Slicker, II, James Rosario, and Robin "Rod" Gassenberger arrived at Somme's. Slicker asked who had "got into it" with Gomez, and Smith stated, "it was me." Slicker grabbed a pool stick, and Smith ran out of the door. Bailey also ran out of Somme's, but Slicker struck him with the pool stick before he left the bar.
After running out of Somme's, Smith ran into a trailer park off of U.S. Highway 90. Bailey continued running down U.S. Highway 90. Smith then heard a shot. Smith conceded that he and Bailey threw bricks at Slicker during the chase, but denied that he or Bailey had any other weapons on the night of the shooting.
Smith later saw a Ford Expedition parked in the Chevron parking area. The vehicle was surrounded by police cars, an ambulance, and a fire truck. According to Smith, Bailey was sitting on the side of one of the police cars and "had buckshots in his face."
According to Chester, prior to returning to Somme's on January 21, 2004, with Smith and Bailey, she asked Smith what he would do if "them boys [were] there." Smith stated he would not do anything, and would not even speak to them, but if" they [came] starting it with [Smith]," "then [Smith] [would] finish it this time." After Slicker chased Smith and Bailey out of Somme's, Chester tried to pick them up in her car. She indicated she heard what she thought were two gunshots. She then saw the defendant holding a rifle or a shotgun. She did not see anyone else at the scene with a weapon.
Immediately prior to the shooting, Bailey asked Reverend Charles to help him, and she allowed him into her Ford Expedition. As Bailey jumped into the vehicle, Reverend Charles heard" a pop." She accelerated away, but indicated she felt "wind coming across [her] face" and saw that the victim's head was slumped over. He was subsequently pronounced dead at the hospital. He was killed by a single gunshot wound to the head. Reverend Charles's right cheek was also permanently scarred during the incident.
Reverend Charles indicated she did not have any weapons in her car on the night of the incident and did not see Bailey with a weapon. She also indicated that neither she nor anyone else in the vehicle rolled down any of the windows. No weapons were recovered from the vehicle.
According to Mills, as he and Gomez were walking to Somme's on the night before the shooting, Smith and Chester pulled up in a car. Mills told Gomez to keep walking. Shortly thereafter, Gomez came into Somme's with his head bleeding. Mills indicated the next day that the defendant asked him what had happened to Gomez. Mills told the defendant that Gomez had been hit in the head with a baseball bat or a pool ball. According to Mills, the defendant stated, "I'm going to get them back."
Mills testified that, after Slicker and Gassenberger chased Smith and Bailey out of Somme's, he walked with the defendant to the defendant's house. According to Mills, the defendant stated, he was "going get a gun" and "I'm. going to shoot that [n_ _ _ _ _ _.]" The defendant retrieved a rifle with a scope, walked up to the highway with the weapon, aimed, and fired. Mills indicated that prior to the defendant shooting, a Ford Expedition pulled over, a "black man" jumped into the vehicle, and Gassenberger smashed the rear driver's-side window of the vehicle with a pipe. According to Mills, after firing, the defendant stated," I think I got him." Mills did not see anyone other than the defendant with a gun at the time of the shooting and did not see anything "come out" of the Ford Expedition, Mills claimed he pleaded with the defendant not to "do it," and told him, "It ain't worth it[J" but the defendant ignored the pleas. Mills indicated he heard one shot fired plus the echo of the shot. Mills denied making any statements about" getting back at [Smith]" prior to the shooting.
Adrian Anthony Hotard testified that he was in Somme's on January 21, 2004, and heard the defendant and Mills talking about Gomez being hit by a baseball bat. Hotard stated, "[the defendant and Mills] were saying if the [n_ _ _ _s] come back, there was going to be some shit." According to Hotard, prior to the shooting, on three or four occasions, when the defendant was "messed up[,]" he had talked about "shooting [n_ _ _ _ _s.]"
Slicker testified that on the day of the shooting, Gomez came to his house "all bloodied up[,]" and stated that someone had hit him with a cue ball or a bat. That evening, after Slicker heard two men were causing trouble, he went into the pool room of Somme's and confronted Smith and Bailey. According to Slicker, he asked the men what they were doing there. He also asked who had hit Gomez in the head. Slicker claimed Bailey approached him, and he picked up a cue stick because he was scared. Slicker did not remember whether or not he struck Bailey with the stick, but believed that Smith and Bailey ran out the door together. Slicker claimed he only pursued Smith and Bailey outside of Somme's because they made him angry by hitting him with bricks. After Smith and Bailey split up, Slicker continued pursuing Bailey on U.S. Highway 90. A Ford Expedition pulled up, and Bailey ran up to the vehicle. Slicker then ran away, but heard one or two gunshots or someone hitting the vehicle. Slicker did not see a gun on Bailey, and Bailey never threatened him with a gun. He also did not see a hand or a weapon come out of the vehicle.
Slicker claimed not to remember telling the Sheriffs Office that the defendant stated he "shot the gun." Slicker did, however, concede that the defendant stated, "I ain't going to jail for no murder." He also conceded that he told the police that the defendant stated, "Man. I shot a couple of times, I think."
Gassenberger also testified at trial. He was with Slicker when Slicker confronted Smith and Bailey on the night of the shooting and fought with Bailey on U.S. Highway 90. Gassenberger indicated he threw a pipe at the door of the Ford Expedition as Bailey got into the vehicle. After he threw the pipe, Gassenberger heard a gunshot and ran away. Gassenberger did not see either Smith or Bailey with a weapon and did not see any arms or hands come out of the Ford Expedition.
After the shooting, Gassenberger asked James Rosario to drive him home. Rosario, Gassenberger, Slicker, and the defendant all rode together to Gassenberger's home. According to Gassenberger, the defendant stated, "I ain't going to jail for no murder."
Michael Victor Martinez, trace evidence expert, also testified at trial. He indicated that the defendant, Slicker, and Mills were all examined for gunshot residue. The results of that testing indicated that all three men may have discharged a firearm, handled a discharged firearm, or have been in close proximity to a discharged firearm. The test results, however, also could have resulted from secondary transfer, i.e., after the men had been in close proximity to someone who had discharged a firearm.
Lafourche Parish Sheriffs Office Detective Toby Gambarella assisted in the investigation of the scene of the shooting. A shell casing was recovered from the north side of the drainage ditch grass alongside the eastbound shoulder of U.S. Highway 90, near Badeaux's Restaurant. The defendant was at the scene when the shell casing was recovered and claimed that he had thrown the casing down after deer hunting. A .30-06 deer rifle and approximately fifteen bullets were subsequently recovered from the defendant's home. Bullet fragments were recovered from the victim's head and from the vehicle.
Louisiana State Police Crime Lab Forensic Scientist Patrick Lane also testified at trial. Due to the rusty condition of the rifle, he was unable to reproduce test fire results, but did determine that the cartridge case found at the scene of the shooting was fired from the rifle recovered from the defendant's home. Also due to the rusty barrel of the rifle recovered from the defendant's home, it was impossible to match the bullet fragment recovered from the victim's head to the rifle. The bullet, however, was consistent in caliber, bullet design, and oxide coating to the bullets recovered from the defendant's home and was also consistent with the casing recovered from the scene of the shooting. The bullet fragment recovered from the Ford Expedition was part of the same bullet recovered from the victim's head. Lane indicated that anytime a gun was fired with buildings or structures around, there was the potential for an echo from the initial blast as well as the added effect of a sonic boom because the firearm in question fired in excess of the speed of sound. Lane conceded that the bullets recovered from the defendant's home were 150-grain bullets and only 41 grains had been recovered from the Ford Expedition.
The defense presented testimony at trial from Ralph Radecker, Jr. Radecker was working at Somme's during January 2004. According to Radecker, after Gomez came into Somme's with a bleeding head, Mills stated, "I'm not putting up with this. They not treating my friends like this. We're going to my house and get a gun."
The defendant did not testify at trial, but the State played his January 22, 2004 audiotaped statement for the jury. In the statement, the defendant claimed Smith hit Gomez with the bat while attempting to rob Gomez. Additionally, the defendant claimed that a couple of years earlier, he had seen Smith pull a gun on someone. The defendant also claimed that when Slicker confronted Smith and Bailey in Somme's, Bailey approached Slicker and stated, "I did[.] I did it. Now what the fuck you think you are? Now what you gon' do about it?" The defendant conceded that he had shot at the Ford Expedition, but claimed he only fired because he saw" a hand come out" of the side of the vehicle. He claimed he shot in self-defense because he thought Smith or Bailey had a gun. He also claimed he fired only to scare Smith or Bailey. He denied pointing his rifle at either Smith or Bailey.
It was established at trial that Bailey was shot and killed in an unrelated incident in Raceland approximately six weeks to two months after the instant crime.

SUFFICIENCY OF THE EVIDENCE
In assignment of error number 1, the defendant argues there was insufficient evidence to support the verdict against him. He asserts that the State failed to prove his specific intent due to the facts that there was conflicting testimony concerning the number of shots fired on the night of the shooting, that there was inconsistent forensic testimony concerning the bullet fragments, and that there was contradictory witness testimony.
The standard of review for sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. In conducting this review, we also must be expressly mindful of Louisiana's circumstantial evidence test, which states in part, "assuming every fact to be proved that the evidence tends to prove, in order to convict," every reasonable hypothesis of innocence is excluded. State v. Wright, 98-0601, p. 2 (La. App. 1 Cir. 2/19/99), 730 So.2d 485,486.
When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. Wright, 98-0601 at p. 3,730 So.2d at 487.
Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). The purpose of the statute is to prevent the intentional killing of human beings. The statute accomplishes this purpose without requiring the State to prove that the defendant specifically intended the death of the person who was actually killed. State v. Henderson, 99-1945, p. 3 (La. App. 1 Cir. 6/23/00), 762 So.2d 747, 750.
The doctrine of transferred intent provides that when a person shoots at an intended victim with the specific intent to kill or inflict great bodily harm and accidentally kills or inflicts great bodily harm upon another person, if the killing or inflicting of great bodily harm would have been unlawful against the intended victim actually intended to be shot, then it would be unlawful against the person actually shot, even though that person was not the intended victim. Henderson, 99-1945 at p. 3, 762 So.2d at 750.
Specific criminal intent is that "state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Though intent is a question of fact, it need not be proven as a fact. It may be inferred from the circumstances of the transaction. Specific intent may be proven by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. Specific intent is an ultimate legal conclusion to be resolved by the factfmder. Specific intent to kill may be inferred from a defendant's act of pointing a gun and firing at a person. Henderson, 99-1945 at p. 3, 762 So.2d at 751.
In State v. Mitchell, 99-3342 (La. 10/17/00), 772 So.2d 78, the Louisiana Supreme Court set forth the following precepts for appellate review of circumstantial evidence in connection with review of the sufficiency of the evidence:
On appeal, the reviewing court "does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events." Rather, the court must evaluate the evidence in a light most favorable to the state and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.
The jury is the ultimate factfmder of "whether a defendant proved his condition and whether the state negated that defense." The reviewing court "must not impinge on the jury's factfinding prerogative in a criminal case except to the extent necessary to guarantee constitutional due process."
Mitchell, 99-3342 at p. 7, 772 So.2d at 83. (Citations omitted).
Further, the Mitchell Court cautioned:
"The actual trier of fact's rational credibility calls, evidence weighing, and inference drawing are preserved ... by the admonition that the sufficiency inquiry does not require a court to ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt." The reviewing court is not called upon to determine whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. Rather, the court must assure that the jurors did not speculate where the evidence is such that reasonable jurors must have a reasonable doubt. The reviewing court cannot substitute its idea of what the verdict should be for that of the jury. Finally, the "appellate court is constitutionally precluded from acting as a `thirteenth juror' in assessing what weight to give evidence in criminal cases; that determination rests solely on the sound discretion of the trier of fact."
Mitchell, 99-3342 at p. 8,772 So.2d at 83. (Citations omitted).
After a thorough review of the record, we are convinced that a rational factfinder, viewing the evidence in the light most favorable to the State, could conclude that the evidence presented in this case proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of second degree murder and the defendant's identity as the perpetrator of that offense against the victim. The verdict rendered against the defendant indicates the jury accepted the testimony of the State's witnesses, including Lane concerning the bullet fragments, and rejected the testimony of the defense witnesses. As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. State v. Johnson, 99-0385, p. 9 (La. App. 1 Cir. 11/5/99), 745 So.2d 217, 223. On appeal, this court will not assess the credibility of witnesses or reweigh the evidence to overturn a factfmder's determination of guilt. State v. Glynn, 94-0332, p. 32 (La. App. 1 Cir. 4/7/95), 653 So.2d 1288, 1310.
Further, in reviewing the evidence, we cannot say that the jury's determination was irrational under the facts and circumstances presented to them. See State v. Ordodi, 06-0207, p. 14 (La. 11/29/06), 946 So.2d 654, 662. Testimony from State witnesses at trial indicated that following the confrontation between Slicker and Smith and Bailey, the defendant stated his intent to shoot Bailey, retrieved a high-powered rifle with a scope from his home, moved closer to Bailey, who was attempting to leave the scene in the Ford Expedition, aimed the weapon at Bailey, and fired, fatally striking the victim. Mills testified that, after shooting into the Ford Expedition, the defendant stated, "I think I got him." The defendant's actions supported a finding of specific intent to kill Bailey, and under the doctrine of transferred intent, that intent was sufficient to support a conviction for the second degree murder of the victim.
Additionally, the verdict rendered against the defendant indicates that the jury rejected the defense theory that Mills, rather than the defendant, fired the shot that killed the victim. The verdict also indicates that the jury rejected the defense theory that the defendant fired to warn Smith and Bailey, rather than to kill them. When a case involves circumstantial evidence and the jury reasonably rejects the hypotheses of innocence presented by the defense, those hypotheses fall, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. See State v. Moten, 510 So.2d 55, 61 (La. App. 1 Cir. 1987). No such hypothesis exists in the instant case.
This assignment of error is without merit.

ATTACK ON CREDIBILITY OF RADECKER
In assignment of error number 2, the defendant argues that the State impermissibly attacked the credibility of Radecker during closing argument.
While a prosecutor may not give his personal opinion regarding the veracity of a witness, it is permissible for a prosecutor to draw inferences about a witness's truthfulness from matters on the record. See La. Code Crim. P. art. 774; State v. Palmer, 00-0216, p. 8 (La. App. 1 Cir. 12/22/00), 775 So.2d 1231, 1236.
During closing argument, the State argued, "I find it curious about Mr. Radecker. ... He says that they came in and he was bleeding. I believe that. And before they left, Richard Mills makes a statement, `I'm going get a gun,' or `I'm going get my gun. They're not going to treat my friend like this.'" The State noted that Radecker failed to mention Mills's alleged statement to the police, and that there was no evidence that Mills or Gomez did anything else that night other than go to sleep. The State commented, "Do I believe Mr. Radecker? I don't know. Cause it just doesn't make any sense to me." The State then noted that Radecker also failed to report Mills's alleged statement to the store manager of Somme's, claiming that he did not think that the statement was important. The State also noted that after the shooting, Radecker filled out a police report, which had been introduced into evidence, and also failed to mention Mills's alleged statement in the report. The State then commented, "I'll leave that up to y'all. Do you think that's reasonable? Particularly, after the murder that night, he still doesn't tell the police about a statement that Richard Mills is going get a gun. I just don't think it's reasonable. I don't think it's worthy of belief."
Initially, we note that the defendant failed to contemporaneously object to the challenged comments by the State. An irregularity or error cannot be availed of after verdict unless, at the time the ruling or order of the court was made or sought, the party made known to the court the action which he desired the court to take, or of his objections to the action of the court, and the grounds therefor. La. CodeCrim. P. art. 841.
Moreover, the challenged comments were based only on matters in the record, and thus were permissible. See State v. Motton, 395 So.2d 1337, 1346 (La. 1981). ("While it is generally considered error for a prosecutor to state an individual belief concerning the accused's guilt when that remark is made in such a way that the jury may conclude that the prosecutor's belief is based on evidence outside the record, the expressing of an opinion based on evidence within the record is permissible.")
This assignment of error is without merit.

RIGHT TO PRESENT A DEFENSE
In assignment of error number 3, the defendant argues the trial court violated his right to present a defense by denying defense counsel the opportunity to question Smith about Bailey's propensity to carry a weapon.
Evidence of a person's character or a trait of his character, such as a moral quality, is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion. La. Code Evid. art. 404(A). However, except as provided in Article 412, evidence of a pertinent trait of character, such as a moral quality, of the victim of the crime offered by an accused may be admissible provided that, in the absence of evidence of a hostile demonstration or an overt act on the part of the victim[1] at the time of the offense charged, evidence of his dangerous character is not admissible. La. Code Evid. art. 404(A)(2).
While La. Code Evid. art. 404(A)(2) provides an exception to the general rule of inadmissibility of evidence of the dangerous character of the victim, in order to come within the exception, the defendant must lay a foundation of either a hostile demonstration or an overt act on the part of the victim at the time of the offense. The Article 404(A)(2) exception is limited because the unconditional and indiscriminate admission of dangerous character evidence itself presents the danger that such evidence "will be appealed to as justifying the deliberate destruction by private hands of a detested malefactor," as well as the danger of confusion where no plausible situation of self-defense is otherwise presented by the evidence. See State v. Hurst, 99-2868, pp. 4-5 (La. App. 1 Cir. 10/3/00), 797 So.2d 75, 79.
Under compelling circumstances, formal rules of evidence must yield to a defendant's constitutional right to confront and cross-examine witnesses and to present a defense. Normally inadmissible hearsay may be admitted if it is reliable, trustworthy, and relevant, and if to exclude it would compromise the defendant's right to present a defense. See U.S. Const, amend. VI; La. Const, art. I, §16; Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); State v. Van Winkle, 94-0947 (La. 6/30/95), 658 So.2d 198; State v. Gremillion, 542 So.2d 1074 (La. 1989); see also State v. Juniors, 03-2425, pp. 44-45 (La. 6/29/05), 915 So.2d 291,325-26.
During the cross-examination of Smith, the State objected when the defense attempted to ask whether Bailey had been killed while attempting to carjack someone. The State argued that the attempted cross-examination was improper as irrelevant. The State argued that there was no evidence of a threat, of an overt act, or that Bailey was the aggressor. The defense argued that the State had asked Smith if he had ever seen Bailey "pull a gun," and the defense had information that Bailey carried a gun and was killed while trying to carjack someone. The defense argued that the proposed questioning went to the issue of Smith's credibility and was also part of the defense because the defendant had indicated he was aware that Bailey carried weapons.
The court noted that the State had asked Smith if Bailey had a gun on the night of the shooting, and Smith had replied negatively. The court indicated that the defense was free to question Smith concerning whether or not Bailey carried guns, but questioned the relevance of how Bailey died.
For purposes of the record, the court explained that Bailey had passed away under questionable circumstances. An individual who claimed to be lost in the Raceland area shot Bailey after a misunderstanding at the person's car window either in a failed robbery attempt by Bailey, a drug deal "gone sour[,]" or under circumstances where Bailey had not brandished a weapon.
In response to questioning by the court, the defense indicated it had no evidence that the defendant and Bailey had "weapons drawn" in another confrontation.
The court ruled:
Okay. So I think, then, what happens is [the defendant's] belief that [Bailey] may have a weapon is one of character, and that is not permissible. So I would also sustain it for those reasons. Also, you're attacking the credibility of a witness who isn't even called and can't be called by an act that is not one of truthfulness, a conviction, or anything else. So I would sustain the State's objection for the various reasons. One, I believe it is character evidence, which is impermissible.
Two, it's an attempt to potentially impeach a witness who can't be called, Elgin Bailey. Three, there is [sic] no facts to support that there is an assaultive or prior aggressive or hostile act between Mr. Bailey and [the defendant] ....
Further, the Court would note that Mr. Smith could only testify up to the time of the event. At the time of the event, his knowledge or [the defendant's] knowledge that they carry guns would not have been that Mr. Elgin Bailey was involved in an incident that occurred six weeks or two months or whatever it was later. So that fact is not relevant at all because it postdated the events for which we're here on trial.
There was no abuse of discretion in the ruling of the trial court. Any probative value of the proposed questioning was substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, and waste of time. Relevant evidence is evidence which tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. Code Evid. art. 401. All relevant evidence is admissible except as otherwise provided by positive law. Evidence which is not relevant is not admissible. See La. Code Evid. art. 402. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay or waste of time. La. Code Evid. art. 403. Evidence concerning Bailey's actions, and particularly whether or not he had a weapon six weeks or two months after the night of the shooting, was too far removed to be admissible. Additionally, the trial court's ruling did not prevent the defendant from presenting his defense.
This assignment of error is without merit.

EXCESSIVE SENTENCE
In assignment of error number 4, the defendant contends this case presents unusual circumstances that warrant a deviation from the mandatory sentence provided by La. R.S. 14:30.1(B).
In felony cases, within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the State or the defendant may make or file a motion to reconsider sentence. La. Code Crim. P. art. 881.1(A)(1). The motion shall be oral at the time of sentence or shall be in writing thereafter and shall set forth the specific grounds on which the motion is based. La. Code Crim. P. art. 881.1(B). Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the State or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review. La. Code Crim. P. art. 881.1(E).
Following the imposition of sentence herein, defense counsel stated, "I respectfully note an objection to the sentence. Although I know it's mandatory, I'd still like to preserve [the defendant's] objection for the record." The defense did not file a written motion to reconsider sentence.
In the instant case, the defendant failed to either make or file a motion to reconsider sentence in accordance with La. Code Crim. P. art. 881.1. Accordingly, review of the instant assignment of error is procedurally barred. La. Code Crim. P. art. 881.1(E); State v. Duncan, 94-1563, p. 2 (La. App. 1 Cir. 12/15/95), 667 So.2d 1141, 1143 (en banc per curiam); see State v. Bickham, 98-1839, p. 6 (La. App. 1 Cir. 6/25/99), 739 So.2d 887, 891 ("a general objection to a sentence preserves nothing for appellate review.")

REVIEW FOR ERROR
The defendant asks that this court examine the record for error under La. Code Crim. P. art. 920(2). This court routinely reviews the record for such errors, whether or not such a request is made by a defendant. Under La. Code Crim. P. art. 920(2), we are limited in our review to errors discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence. After a careful review of the record in these proceedings, we have found no reversible errors. See State v. Price, 05-2514, pp. 18-22 (La. App. 1 Cir. 12/28/06), 952 So.2d 112, 123-25 (en banc), writ denied, XXXX-XXXX (La. 2/22/08), 976 So.2d 1277.

DECREE
For the foregoing reasons, we affirm the conviction and sentence.
CONVICTION AND SENTENCE AFFIRMED
NOTES
[1] While Bailey was not the victim in this case, he was apparently the intended victim.